GEORGE F. LIBBY et als., Petrs., *vs.* CHARLES G. ENGLISH, et als.

Androscoggin. Opinion May 17, 1913.

*Appeal. Australian Ballot Law. Cross. Defective Ballots. Distinguishing Marks. Intention. Marking. Municipal Elections. Party Groups. Public Laws of 1911, Chapter 71. Returns. Revised Statutes. Chapter 6, Sections 70-74. Stickers.*

1. The plain intendment of the statute, Public Laws of 1911, Chapter 71, is that in counting ballots under the Australian Ballot Law of this State, all ballots marked with a cross in the square at the head of the column shall be counted, if the intention of the voter can be ascertained, no matter what other casual, accidental, mistaken or unnecessary marks the voter may have placed upon the ballot, provided the same are not deemed to have been fraudulently made.
2. When a voter has made unauthorized marks upon his ballot, or has made a peculiar or irregular mark in the proper place, with a design to distinguish it from other ballots, so that the identity of the voter can be determined afterwards, such marking must be deemed dishonest and fraudulent, and the ballot must be rejected.
3. A ballot not marked with a cross in the square at the head of any column cannot be counted. Such marking is indispensable.
4. Marking a cross in the margin opposite to a candidate's name does not necessarily invalidate a ballot, but a ballot so marked cannot be counted unless it is also marked with a cross in the square at the head of a column.
5. The placing of crosses in two squares at the heads of columns does not necessarily invalidate a ballot. It does invalidate the ballot, if the marking in that manner is deemed to be fraudulent. Such a ballot, if not deemed

to have been fraudulently marked, is to be counted once for the candidates whose names appear in both columns, but not for any candidate whose name appears in only one column.

6. A ballot upon which the voter apparently first made a cross in a square, and then covered over the connecting part of the cross and one of the arms with three stickers, one running at nearly right angles with the other two, must be deemed to have been so marked for a fraudulent purpose, and it cannot be counted.

7. A ballot upon which the voter wrote "Geo. H." at the bottom must be deemed to have been so marked for a fraudulent purpose, and it cannot be counted.

8. When the place where a name is written indicates on the face of it a purpose to vote for a person of that name, rather than a fraudulent purpose to make a distinguishing mark, the vote should be counted, even if it should appear that there was no voter of that name in the city where the election was held.

9. When it appears that each of two candidates received the same number of ballots, neither can maintain a petition under Revised Statutes, Chapter 6, Sections 70-74 to determine the election.

On appeal by respondents from decision of the presiding Justice. Petition sustained with single bill of costs in cases of petitioners Libby, Kernan, Coombs, Elder, McMinn and Reade; dismissed in case of petitioner Maines.

This is a petition brought under Revised Statutes, Chapter 6, Sections 70-74, to determine whether the petitioners, or respondents, were severally elected to the offices for which they were candidates at the municipal election in ward 2 in Lewiston on the first Monday of March, 1913. The case was heard by a Justice of the Supreme Judicial Court, and from the decision by said Justice rendered, the respondents appealed and the case was thereupon certified to the Chief Justice, under Section 12, Chapter 6 of Revised Statutes.

The case is stated in the opinion.

*W. B. Skelton, and W. H. White, Jr.,* for petitioners.

*William H. Hines,* for respondents.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

SAVAGE, C. J. This is a petition brought under R. S., Chap. 6, Sections 70-74 to determine whether the petitioners were severally elected to the offices for which they were candidates at the munici-

pal election in ward 2, in Lewiston, on the first Monday in March, 1913, or whether the respondents were. The case comes here on appeal by the respondents from the judgment of a single Justice. The petition is joint. The statute seems to contemplate a separate petition for each petitioner. But in this case no objection has been made to the form of the proceeding. And as the rights of all the petitioners on the one side, and all of the respondents on the other, depend practically upon the same facts, we will proceed to an examination of the merits. As was decided in *Bartlett* v. *McIntire,* 108 Maine, 163, the case is to be considered de novo upon all disputed questions of law and fact.

The ballot used at the election had four columns, or party groups of names, "Democrat," "Republican," "Progressive" and "Citizens." The names in the "Republican" and "Citizen" columns were identically the same. The names in the "Progressive" column were the same as in the "Republican" and "Citizen" columns, except for the office of mayor. The names of all the petitioners appeared in all three of these columns. The names of all the respondents appeared in the "Democrat" column.

We shall need to consider only such ballots counted or rejected, as were in dispute before the single Justice. They are sixteen in number. Of these the single Justice counted three for the petitioners, three for the respondents, and rejected ten as defective. No objection is now made to the three that were counted for the respondents, so that they disappear from the case. For convenience we number the remaining thirteen serially. Ballots 1 to 7 inclusive have no cross in any of the squares at the heads of columns. Five of these, however, have crosses in the column against or under the names of one or more, and in one case, all of the respondents. One has a cross under the name of the candidate for mayor in the "Democrat" column, and one a cross under the name of the candidate for mayor in the "Citizens" column. Ballots 8 and 9 have crosses in the squares at the head of both the "Republican" and "Citizens" columns. Ballot 10 has crosses in the squares at the head of both the "Republican" and "Progressive" columns. Ballot 11 was marked as follows in the square at the top of the "Democrat" column:—First, as may be believed, the voter made a cross with a

pencil. Then he pasted three "Timothy F. Callahan" stickers in the form of a cross over and partly concealing the pencilled cross, as appears in this sketch.

Ballot 12 has "Geo. H." written on the bottom of it.

Ballot 13 is not before us for examination. It is claimed in the appeal that it was inadvertently returned in the ballot box to the city clerk, after the hearing, and so was not retained among the contested ballots. But we think it is not necessary to examine it, for we assume that it is correctly described in the appeal. The appeal states that the name "Jas. A. Scoot was written under the name of John D. Clifford," one of the respondents, or "George K. Elder" one of the petitioners, the names of Clifford and Elder being opposite to each other in adjoining columns, and the reason assigned in the appeal for rejecting the ballot is that there is no voter by the name of Jas. A. Scoot in the city of Lewiston. Hence it is claimed that the name is a distinguishing mark.

Most of the essential rules which govern the manner of voting under the so called Australian Ballot law of this State, and of counting the ballots, were carefully considered and determined in *Bartlett* v. *McIntire*, 108 Maine, 161, and *Pease* v. *Ballou*, 108 Maine, 177. The statutory provisions in force when those cases

originated, so far as it is necessary to refer to them now were these:—

"On receipt of his ballot the voter shall forthwith, and without leaving the enclosed space, retire alone to one of the voting shelves or compartments so provided and shall prepare his ballot by marking in the appropriate margin or place a cross (x) as follows: He may place such mark within the square above the name of the party group or ticket, in which case he shall be deemed to have voted for all the persons named in the group under such party or designation." Then follow provisions for erasing names and filling in other names, and for the use of stickers. "Before leaving the voting shelf or compartment the voter shall fold his ballot without displaying the marks thereon, in the same way it was folded when received by him, and he shall keep the same so folded until he has voted." R. S., Chap. 6, Sect. 24. "If a voter marks more names for any one office than there are persons to be elected to such office, or if for any reason it is impossible to determine the voter's choice for an office to be filled, his ballot shall not be counted for such office. No ballot without the official endorsement shall, except as herein otherwise provided, be allowed to be deposited in the ballot box, and none but ballots provided in accordance with the provisions of this chapter shall be counted. Ballots not counted shall be marked defective on the back thereof, and shall be preserved, as required by section twenty-five." R. S., Chap. 6, Sect. 27.

Under these statutory provisions, it was held in *Bartlett* v. *McIntire,* supra, among other things, that although in the original statute, Laws of 1891, Chapter 102, one of the ways by which the voter was authorized to indicate his choice was by making a cross in a blank space opposite the name of the candidate of his choice, yet the amendment of 1893, Chapter 267, rendered inapplicable the foregoing provision of the statute of 1891, that marking in the margin or opposite the name of a candidate was no longer recognized as a legal method of marking, that the only marking permissible under the statutes then in force, in order legally to indicate a choice must be in the square at the head of the party group, that while marking in the margin opposite a candidate's name did not necessarily invalidate a ballot, that alone could not validate one, because it was not a

compliance with the statute requirement, that the marking must be as the statute commands, in a particular place and by a particular emblem, and that the intention of the voter must be expressed in compliance with statutory requirements, and if not so expressed his ballot is fatally defective.

Furthermore is was held, in the same case, that before a ballot should be rejected because of an alleged distinguishing mark, it should appear (1) that the mark is in fact a distinguishing mark, that is, a mark or device of such a character as to distinguish this ballot from others, (2) that it was made intentionally, and not accidentally, and (3) that it was intended to be a distinguishing mark, that is, a mark which fairly imports upon its face design and dishonest purpose. But, it was also held, "if a voter has placed such a mark or device or name or initials or figures upon the ballot as seem inconsistent with an honest purpose, such a ballot should be rejected."

By Public Laws of 1911, Chapter 71, the Legislature amended Section 27 of Chapter 6, Revised Statutes by adding the following words: "No marks, other than those authorized by law, shall be placed upon the ballot by the voter, but no ballot, after having been received by the election officers, shall be rejected as defective because of marks, other than those authorized by law, having been placed upon it by the voter, unless such marks are deemed to have been made with fraudulent intent, and no ballot shall be rejected as defective because of any irregularity in the form of the cross in the square at the head of the party column, unless such irregularity is deemed to have been intentional and made with a fraudulent purpose."

The amendment of 1911 seems to have been framed to modify some strict rules of rejection expressed in the earlier cases, *Curran* v. *Clayton*, 86 Maine, 42 and *Durgin* v. *Curran*, 106 Maine, 509, and is not inconsistent in the main with the modified rules expressed in *Bartlett* v. *McIntire.* The requirement that a ballot, to be counted, must be marked with a cross in the square at the head of a party column is neither abrogated nor modified. The law in this respect stands as declared in *Bartlett* v. *McIntire.* It is true, indeed, that the 1911 statute expressly prohibits the placing of any mark upon the ballot by the voter other than those authorized by law. But it is

obvious that this provision is practically ineffective, as to marks on the face of the ballot, because the statute, Section 24, requires the voter, before leaving the voting shelf, to fold his ballot without displaying the marks thereon, and to keep it so folded until he has voted, and the 1911 amendment declares that no ballot after it has been received by the election officers shall be rejected as defective because of unauthorized marks placed upon it by the voter, or because of any irregularity in the form of the cross, unless the one or the other, as the case may be, is deemed intentional and made with a fraudulent purpose. Whatever mark is made on the face of the ballot by the voter, the election officers cannot know of it before the ballot is received, and after it is received, it cannot be rejected, unless deemed to be intentional and fraudulent.

The plain intendment of the statute seems to be that all ballots marked with a cross in the square at the head of the column shall be counted, if the intention of the voter can be ascertained, no matter whatever other casual, accidental, mistaken or unnecessary marks the voter may have placed upon the ballot, provided the same are not deemed to have been fraudulently made. And since the manifest purpose of the Australian ballot law is to secure the secrecy of the ballot and thereby prevent bribery and corruption at the polls, *Bartlett* v. *McIntire,* supra, it must follow that when a voter has made unauthorized marks upon his ballot, or has made a peculiar or irregular mark in the proper place, with a design to distinguish it from other ballots, so that the identity of the voter can be determined afterwards, and so that it may be ascertained that he has kept his part of a bargain, such marking must be deemed dishonest and fraudulent; and the ballot must be rejected.

We now come to a consideration of the particular ballots involved in the decision of this case. Under the foregoing rules, it is manifest that ballots 1 to 7 inclusive must be rejected. However clearly the voters who marked these ballots may have indicated their intentions by other markings on the ballots, they failed to comply with the one essential statutory requirement that ballots must be marked with a cross in the square at the head of a party column. This is indispensable. Whatever else he does the voter must express his intention as the statute requires. *Bartlett* v. *McIntire,* supra.

We think ballots 8, 9 and 10 should be counted for the petitioners. The placing of crosses in two squares at the heads of party columns does not necessarily invalidate the ballot, since the passage of the 1911 statute. It would invalidate it if such marking appeared to be fraudulent. It could not be counted for a particular office when different names appear in different columns as candidates for that office, for in such case it would be impossible to determine for whom the voter intended to vote. The 1911 amendment declares that ballots shall not be rejected because of unauthorized marks, unless deemed fraudulent. We think these ballots come within the saving grace of that amendment. That a voter marked in the squares at the head of the columns, both containing the same names of candidates, or in the case of another of the ballots, the same names except for the office of mayor, appears to us rather to have been due to a misapprehension as to the proper manner of marking than to a fraudulent purpose. It clearly seems to us that it was the intent of the voter to cast one ballot, and only one for the names that appeared in both columns, and those names included all the petitioners.

Ballot 11 presents a different question. If it be assumed, as we think it may, that the voter first made a pencilled cross in the square, he then covered over the connecting part of the cross with three stickers, one running at nearly right angles with the other two. What remains now of what we assume was once a cross does not appear to the eye as a cross, but rather the three ends of the original lines, the fourth, as well as the connecting point, being entirely concealed. So the voter left it. He left no visible cross except that made by the stickers. Besides, it is difficult to understand what good or allowable purpose the voter had in so preparing his ballot. It is manifest that it was not done accidentally. It was designed. What was the purpose? If he had only used one sticker it might be concluded that he had intended to vote a split Democratic ticket, with Mr. Callahan for mayor, but mistook the proper place for the sticker. But why use three? We can judge of the ballot only by the voter's acts. His acts indicate that the stickers were not placed there inadvertently, but for a purpose. What good purpose could they serve? None. If such a ballot as this is not to be rejected for

unlawful distinguishing marks, we can hardly conceive of one that should be. If ballots such as this are to be counted, there is no virtue left in the secrecy of the ballot. Purchasable voters may easily prove their right to their ill gotten rewards. Judging this ballot by its face, and that is all we have to judge by, there is, we think, no purpose discoverable, but a dishonest one. Therefore we conclude this ballot must be rejected.

Ballot 12 falls in the same category. The voter wrote "Geo. H." on the bottom of his ballot. This is clearly an unlawful distinguishing mark. The act itself imports a dishonest, fraudulent purpose. The ballot cannot be counted.

In ballot 13, the name "Jas. A. Scoot" appears written in the body of the ballot, under the name of John D. Clifford, or that of George K. Elder, or perhaps partly under both. It is stated in the appeal that there is no voter of that name in ward 2, or in the city. But we have no evidence before us on the subject, either way. Even if the allegation were proved, the writing in of his name, unless fraudulently done, would not necessarily invalidate the ballot. A voter may vote for whom he pleases, whether the name be on the official ballot, or is written in by himself. The eligibility of his candidate does not affect the validity of his ballot. The place where the name was written indicates on the face of it a purpose to vote for a person of that name, rather than a fraudulent purpose to make a distinguishing mark. We think this ballot should be counted for the petitioners. Inasmuch as this ballot is not included by the presiding Justice as one of the disputed ballots, we assume that he counted it with the undisputed ballots. We will do likewise, and add it to the count for the petitioners.

We conclude therefore that there should be counted for the petitioners and the respondents respectively the following numbers of ballots.

For Alderman

    For George F. Libby (petitioner)

| | |
|---|---|
| Undisputed ballots, | 259 |
| Ballots 8, 9 and 10, | 3 |
| | 262 |

    For Charles G. English (respondent)

| | |
|---|---|
| undisputed ballots, | 257 |

For common councilmen
　　For Charles G. Kernan (petitioner)
　　　　Undisputed ballots,　　　　　　　　　　　260
　　　　Ballots 8, 9 and 10 to be added,　　　　　3
　　　　　　　　　　　　　　　　　　　　　　　───
　　　　　　　　　　　　　　　　　　　　　　　263

　　For Charles F. Maines (petitioner)
　　　　Undisputed ballots,　　　　　　　　　　　258
　　　　Ballots 8, 9 and 10 to be added,　　　　　3
　　　　　　　　　　　　　　　　　　　　　　　───
　　　　　　　　　　　　　　　　　　　　　　　261.

　　For Henry A. Coombs (petitioner)
　　　　Undisputed ballots,　　　　　　　　　　　259
　　　　Ballots 8, 9 and 10 to be added,　·　　　　3
　　　　　　　　　　　　　　　　　　　　　　　───
　　　　　　　　　　　　　　　　　　　　　　　262

　　For James E. Ballard (respondent)　　　　　261

　　For Ferdinant Ebert (respondent)　　　　　256

　　For M. A. Sullivan (respondent)　　　　　　260

For member of Superintending School Committee
　　For George K. Elder (petitioner)
　　　　Undisputed ballots,　　　　　　　　　　　258
　　　　Ballots 8, 9 and 10 to be added,　　　　　3
　　　　　　　　　　　　　　　　　　　　　　　───
　　　　　　　　　　　　　　　　　　　　　　　261

　　For John D. Clifford (respondent)　　　　　259

For Warden
　　For Alexander McMinn (petitioner)
　　　　Undisputed ballots,　　　　　　　　　　　258
　　　　Ballots 8, 9 and 10 to be added,　　　　　3
　　　　　　　　　　　　　　　　　　　　　　　───
　　　　　　　　　　　　　　　　　　　　　　　261

　　For Thomas F. Hawkins (respondent)
　　　　Undisputed ballots,　　　　　　　　　　　259

For Ward Clerk
　　For John L. Reade (petitioner)
　　　　Undisputed ballots,　　　　　　　　　　　259
　　　　Ballots 8, 9 and 10 to be added,　　　　　3
　　　　　　　　　　　　　　　　　　　　　　　───
　　　　　　　　　　　　　　　　　　　　　　　262

For M. F. McGillicuddy (respondent)
              Undisputed ballots,                                    260

It is therefore held that the petitioners receiving a plurality of the ballots cast at the municipal election in ward 2 in the city of Lewiston, held on the first Monday in March, 1913, were duly elected, as follows:—

George F. Libby to the office of alderman.

Charles G. Kernan and Henry A. Coombs to the office of common councilmen.

George K. Elder to the office of Superintending School Committeeman.

Alexander McMinn to the office of warden, and John L. Reade to the office of ward clerk.

It appearing that Charles F. Maines and James E. Ballard received an equal number of ballots for the office of common councilman, it is held that neither was elected. It is moreover held that since the petitioner has not shown himself entitled to the office, the petition cannot be sustained as to him. *Benner* v. *Payson,* 110 Maine, 204.

> *Petition sustained with single bill of costs*
> *in cases of petitioners Libby, Kernan,*
> *Coombs, Elder, McMinn and Reade;*
> *dismissed in case of petitioner Maines.*