WILLIAM H. MURRAY, Pet'r, In Equity, *vs.* ALBERT E. WAITE.

Cumberland.    Opinion July 24, 1915.

*Ballots.    Defective Ballots.    Distinguishing Mark.    Election.    Intention.
Marking.    Petition.    R. S., Chap. 6, Sec. 70.*

1.   According to the amendment of Chapter 71 of the laws of 1912, all ballots
marked with a cross in the square at the head of the column shall be counted,
if the intention of the voter can be ascertained, no matter what casual, acci-
dental, mistaken or unnecessary mark the voter may have placed upon the
ballot, provided the same does not seem to have been fraudulently made; and
the fraudulent intent must appear affirmatively.

2.   A ballot having a cross in a marked square, but having a small mark drawn
vertically, and apparently not accidentally, through all the names in party
column, cannot be counted.

3.   A ballot having a cross in the party square and in the square below the cross,
a sticker, bearing the name of that party candidate for mayor, and having also
two stickers not completely separated bearing the same name, placed nearly
over the name of the same candidate, is counted.

4.   A ballot having a cross in the party square and two stickers not completely
separated over the name of the candidate for alderman, is counted.

5.   A ballot having a cross in the party square and two stickers not completely
separated over the name of the candidate for alderman, is counted.

6.   A ballot having a cross in the party square and another beneath it, across the
party designation, is counted.

7.   A ballot having a cross in the party square with an extra line entering into it,
showing an evident attempt to make and erase the previous cross, in which
erasure the paper was broken, is not a mutilated ballot and is counted.

8.   A ballot having for a cross in the party square, a peculiar figure, each arm of
the cross being made of practically parallel lines with the ends crossed, is
counted.

9.   A ballot having for a cross in the party square lines which are broad and dull
as if made with the rubber end of a pencil is counted.

10.   A ballot containing a cross in the party square, around which a circle is
drawn, is not counted.

11.  A ballot having a cross in the party square and below a small cross beneath the residence of the candidate for mayor and a mark that looks like a T opposite the name of the candidate for ward clerk, whose name begins with T, is counted.

12.  A ballot having a cross in the party square and a sticker not placed on or over the name of the candidate for alderman in the column, but under it so that both names appear, is not counted.

13.  A ballot having a cross in the party square where the voter filled in his name of choice for party alderman, but failed to erase the name of the candidate not voted for, so that both names appear, is not counted.

14.  A ballot cast by one admittedly never a resident of the ward cannot be counted.

On appeal by petitioner.  Petition dismissed with costs.

This is a petition brought under R. S., Chap. 6, Sec. 70, to determine whether the petitioner or the respondent was elected Alderman from Ward 1 in the City of Portland at the annual election held on the first Monday of December, 1914.  From the findings of the sitting Justice, who heard the case, the respondent appealed and the case was transmitted to the Chief Justice.

The case is stated in the opinion.

*Guy H. Sturgis, and C. S. Chaplin,* for plaintiff.

*Eben Winthrop Freeman,* for defendant.

SITTING:  SAVAGE, C. J., SPEAR, KING, BIRD, HANSON, PHILBROOK, JJ.

SAVAGE, C. J.   This is a petition brought under Chap. 6, Sec. 70, of the R. S., to determine the election of alderman in Ward 1, Portland at the municipal election in 1914.  The certificate of election was given to the respondent.  The petitioner seeks to oust him.

After hearing, the sitting Justice made the following findings and decree:—

"It is admitted by the parties and their counsel that in Ward 1 proper the

| Number of uncontested ballots is | 1328 |
|---|---|
| "    " defective    "    " | 35 |
| "    " contested    "    " | 15 |
| Total, | 1378 |

Island Ward 1

| Number of | uncontested ballots is | | 93 |
| " " | contested " " | | 1 |
| | Total | | 94 |

Island Ward 2

| Number of | uncontested ballots is | | 166 |
| " " | defective " " | | 5 |
| " " | contested " " | | 9 |
| | Total | | 180 |

Total number 1652, and of these it is admitted that the petitioner received 784 and the respondent 784. This leaves a total of twenty-five contested ballots to be passed upon by the court. These ballots for the sake of convenience were marked 1 to 25 severally at the hearing and will now be considered and disposed of in the same order.

Ballots Nos. 1, 2, 3, 4, 5, 6, 7, 8, 14, 18, 19, 21, 22, contain crosses more or less irregular in form, but in my opinion should be counted.

Ballot 9 has a cross in the party square, and then a pencil mark drawn vertically through every name in the party column beneath. What the voter's intention was it is difficult to determine. Had he drawn a horizontal line through any or all the names of the candidates, the ballot could not be counted for such candidates. Instead, he has drawn a vertical line through all the names. It does not seem to be accidental. The line is as heavy as those that compose the cross. While it may not be necessary to consider this as a distinguishing mark of such a character as to invalidate the ballot, yet the voter certainly has failed to indicate his intention. The cross would show his intention to vote for the names below, the erasing line would show a contrary intention. He has left doubtful what he intended to do. Under these circumstances the ballot is rejected.

Ballot 10 has a cross in the party square and below the cross in the same square is a sticker bearing the name of that party candidate for mayor. I do not regard this as an invalidating distinguishing mark. It also has a double sticker, that is two stickers bearing

the same name, and separated except at the left hand end.   This was placed nearly over the name of the same candidate for alderman, a rather senseless performance, but only one name was voted for alderman, and the expressed intention of the voter is clear.   This ballot is counted.

Ballot 11 has a cross in the party column and the same sort of a double sticker over the name of the candidate for Alderman underneath.   The fact that the stickers were not completely separated, so that the voter put on two of the same name instead of one, should not invalidate the ballot.   This ballot is counted.

Ballot 12 has a cross in the party square and another beneath it, across the party designation.   I do not regard this as an invalidating distinguishing mark.   This ballot is counted.

Ballot 13 has a cross with an extra line entering into it, and also shows an attempt to make and erase a previous cross.   In the erasure the paper was broken, but this does not make it a mutilated ballot. A mutilated ballot is one where the name of a candidate is cut out. An inspection of this ballot clearly shows what took place, and this ballot is counted.

Ballot 15 has a peculiar figure in the party square, each arm of the cross being made of practically parallel lines with the ends closed. Some doubt arises as to whether this should be counted, but under the provisions of chapter 71 of the laws of 1911, that "no ballot shall be rejected as defective because of any irregularity in the form of the cross in the square at the head of the party column unless such irregularity is deemed to have been intentional and made with a fraudulent purpose," I give the benefit of the doubt to the voter and count the ballot.

Ballot 16 has a cross in the party square the lines of which are broad and dull, as if made with the rubber end of a wide pencil. This, I think, meets the requirements and is counted.

Ballot 17.   The party square contains a cross, around which is drawn a circle.   This clearly falls within the prohibited symbols and this ballot is rejected.

Ballot 20 has a cross in the party square and below a small cross beneath the residence of the Mayor and a mark that looks like a T opposite the name of the candidate for Ward Clerk, whose name begins with T.   I do not regard these as invalidating distinguishing marks and this ballot is counted.

Ballot 23 has a cross in the party name, but the sticker for Alderman is not placed on or over the name of the Alderman on the ticket, but beneath it, so that both names plainly appear. This ballot, so as far as Alderman is concerned must be rejected.

Ballot 24 is of the same character as No. 23. The voter made his cross in the party square and then filled in the name of his choice for Alderman, but failed to erase the candidate's name on the ballot, so that both names plainly appear. This ballot must be rejected.

Ballot 25 was challenged at the polls. It was cast by one who admittedly never resided in this ward and who was permitted to vote by order of the Board of Registration. The confusion arose over similarity of names and it is apparent that the mistake was an honest one on the part of the Board of Registration.

However, R. S., Chap. 5, Sec. 4, provides that "Every person qualified to vote, as hereinbefore provided, shall vote only in the ward of the city and voting precinct thereof, if any, in which he had his residence on the first day of April preceding, or his becoming an inhabitant after said day."

On April 1, 1914, this voter resided in Ward 2, and not in Ward 1, and the attempt of the Registration Board to transfer him to Ward 1, through a mistaken idea of the facts, was ineffectual and invalid. This ballot is rejected.

Of these 25 contested ballots therefore, the result is as follows:

| | |
|---|---|
| Number counted for petitioner | 10 |
| Number counted for respondent | 10 |
| Number rejected | 5 |
| Total | 25 |

I conclude therefore that there should be counted for the petitioner and the respondent respectively the following ballots:

| | |
|---|---|
| For William H. Murray (Pet'r) Undisputed ballots, | 784 |
| Of the disputed ballots Nos. 5, 6, 7, 8, 10, 11, 12, 13, 14, 22 | 10 |
| Total | 794 |

For Albert E. Waite (Respondent) Undisputed
   ballots,                                        784
Of the disputed ballots, Nos. 1, 2, 3, 4, 15, 16,
   18, 19, 20, 21                                10
                             Total                       794
Rejected,
   Nos. 9, 17, 23, 24, 25                          5

It is therefore held that neither the petitioner nor the respondent received a plurality of the ballots cast for Alderman at the municipal election in Ward 1 and Island Wards 1 and 2 in the City of Portland held on the first Monday of December, 1914, and that as they received an equal number of ballots for said office neither was elected.

It is also held that since the petitioner has not shown himself entitled to the office his petition cannot be sustained. *Benner* v. *Payson*, 110 Maine, 204; *Libby* v. *English*, 110 Maine, 449.

                              *Petition dismissed without costs.*"

And from this decision the respondent appealed.

It is unnecessary to give any further description of the ballots in dispute than that contained in the findings of the sitting Justice. Nor will it serve any useful purpose to discuss the ballots separately. The criticisms, in argument, on the one side and the other, of the decision rendered relate mostly to alleged distinguishing marks and defective marking. And upon these subjects our attention has been called to prior decisions of this court. The decisions, however, prior to the enactment of Chap. 71 of the Laws of 1911, can throw very little light upon the questions of distinguishing marks and irregular marking. Those decisions were interpretations of the statute as it existed from time to time prior to 1911. Chapter 71 of the Laws of 1911 was a radical amendment of the statute then existing. By that amendment it was provided that "no ballot, after having been received by the election officers, shall be rejected as defective because of marks, other than those authorized by law, having been placed upon it by the voter, unless with a fraudulent intent, and no ballot shall be rejected as defective because of any irregularity in the form

of the cross in the square at the head of the party column, unless such irregularity is deemed to have been intentional and made with a fraudulent purpose."

In discussing this statute in *Libby* v. *English*, 110 Maine, 449, we said:—"The plain intendment of the statute seems to be that all ballots marked with a cross in the square at the head of the column shall be counted if the intention of the voter can be ascertained, no matter' whatever other casual, accidental, mistaken or unnecessary marks the voter may have placed upon the ballot, provided the same are not deemed to have been fraudulently made." And we add now that the fraudulent intent or purpose must appear affirmatively. If it does not so appear, the ballot must be counted. Fraud is not to be surmised, it must clearly appear. A ballot should not be rejected on the ground of fraudulent marking, when its appearance is consistent with any honest action or intention of the voter. The burden to show fraud is on the one that claims it. Doubts should be resolved in favor of the voter, unless the fraudulent purpose clearly appears. When we consider the disadvantages under which many voters mark their ballots, such as poor eyesight, bad light, or unfamiliarity even in the use of a pencil, it is not to be wondered at that there are many, and sometimes curious, irregularities in marking. And yet in most instances it is safe to say the voter had no dishonest purpose. On some ballots too the redundancy of marks suggests that the voter, probably having lived in another State, is more familiar with other methods of marking ballots than he is with ours.

In view of the provisions of the statute of 1911, our conclusion is that the decision of the sitting Justice upon all these ballots was correct, and we affirm it for the reasons stated by him.

In the case of one ballot, it is admitted that the voter did not reside in Ward 1, and never had resided there. He resided in Ward 2. His name was added to the voting list in Ward 1, on election day, upon a certificate of the Board of Registration, and he was allowed, under challenge, to vote. R. S., Chap. 5, Sec. 4, provides that "a person shall vote only in the ward of the city . . . . . in which he had his residence on the first day of April preceding." Not being a resident of Ward 1, at any time, he had no right to vote there, and no act of the board of registration, or of the ward officers, could give him any right to vote there. The vote was unauthorized and unlawful, and was properly rejected by the sitting Justice.

Upon the whole it appears that the petitioner and the respondent each received 794 votes that should be counted, and that the ballot was a tie. It follows that the petitioner was not elected, and not having been elected he cannot maintain this proceeding to oust the respondent. *Benner* v. *Payson,* 110 Maine, 204; *Libby* v. *English,* 110 Maine, 449.

The sitting Justice dismissed the petition "without costs." The statute, R. S., Chap. 6, Sec. 74, says, "the prevailing party shall recover costs." Under that statute the prevailing party is entitled to costs as a matter of law. The question of whether any costs shall be awarded is not left to the discretion of the sitting Justice as in equity. And we think the respondent, so far as this proceeding is concerned, is the prevailing party. To be sure we find that he received no more votes than the petitioner did. But he received the certificate of election, he qualified as Alderman, he is now in possession of the office. He is alderman de facto. The petitioner brought this petition to get himself declared elected, and thereupon to oust the respondent. He has failed to do so. He has not ousted the respondent. The respondent is not affected by the result. He holds the office under the forms of law. Whether he may be ousted in some other form of proceeding is not now the question. For the present, the respondent has prevailed. As the case stands, we think it is fairly within the meaning of the statute as to costs.

The decree of the sitting Justice should be modified in respect to costs, and the certificate will be,

*Petition dismissed with costs.*