**OPINION OF THE JUSTICES of the Supreme Judicial Court given under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions propounded by the House in an order Dated Jan. 13, 1977.

Answered Feb. 1, 1977.

## HOUSE ORDER PROPOUNDING QUESTIONS

Whereas, in connection with the proposed examination by the House Committee on Elections of the ballots cast in the general election of November 2, 1976, for Representative from House District 29, representing the Towns of Gray, New Gloucester, Sebago and Raymond, certain questions have arisen with regard to the validity of certain election procedures and certain ballots because of a contest for Representative from House District 29 by Gordon F. Cunningham and Michael H. Gibbs; and

Whereas, Michael H. Gibbs has been provisionally seated in the House subject to outcome of this contest; and

Whereas, Gordon F. Cunningham caused a recount to be had before the convening of the Legislature by appropriate election officials of the State of Maine at which recount both parties were represented; and

Whereas, Gordon F. Cunningham then appealed from the recount to the Commis-

sion on Governmental Ethics and Election Practices as provided in Maine law; and

Whereas, at the conclusion of the review by the Commission on Governmental Ethics and Election Practices, and based on the decisions of the Commission on Governmental Ethics and Election Practices, there were 1911 votes cast for Gordon F. Cunningham and 1904 votes cast for Michael H. Gibbs and that this result included Commission decisions relating to 39 ballots in dispute (a copy of the Commission report is attached hereto as Exhibit A); and

Whereas, this matter was brought to the attention of the House of Representatives on January 5, 1977; and

Whereas, the House referred to the Committee on Elections for its review the question of who should have the seat from House District 29; and

Whereas, the ballots in dispute and the questioned election procedures could decide the election or provide a basis for finding the election invalid; and

Whereas, no evidence has been offered to the House of Representatives or the Committee on Elections that there has been any fraud of any nature or description in the casting of the votes in question; and

Whereas, it appears that the facts relating to certain election procedures are undisputed and that the question of compliance or noncompliance of the statutes is therefore reduced to a question of law; and

Whereas, it appears that the reason for counting the questionable ballots one way or another must appear on the face of the ballots and must, therefore, be reduced to a question of law; and

Whereas, the ballots in dispute are attached hereto and made a part hereof and are identified by markings affixed to each ballot which have been placed there by officials of the State of Maine and are not considered distinguishing marks, namely numbers 1 through 39, inclusive; and

Whereas, it appears to the members of the House of Representatives of the 108th Legislature that questions of law have arisen which make this occasion a solemn one; now, therefore, be it

Ordered, that in accordance with the provisions of the Constitution of the State, the Justices of the Supreme Judicial Court are hereby respectfully requested to give their opinion on the following questions, to wit:

I

The Committee has found that in 14 instances voters presented themselves at the polling place in New Gloucester and requested that a specific individual provide them with assistance in voting. The election warden, designated an additional aide of the opposite party to accompany the voter and the aide requested by the voter into the polling booth. The election warden advised the aides that it was not necessary for them to document the fact that the voter was provided with assistance unless one of the aides physically marked the ballot at the request of the voters. No notation was made on the ballots that this assistance was provided. These ballots were not challenged at the polling place and, as a result, there is no way to identify the ballots cast by these voters with assistance and they are not included with the 39 ballots submitted with these questions. The Committee has found that the procedure followed in providing voter assistance was done at the express direction of election officials and with their approval and that no question of fraud exists.

QUESTION:

In the factual situation described, are the provisions of the Maine Revised Statutes Annotated, Title 21, section 862, to be interpreted as mandatory or directory?

II

The Committee has found that in 11 instances as evidenced by ballots 1 through 7 and 17 through 20 attached hereto, voters

presented themselves at the polling place in New Gloucester and requested that a specific individual provide them with assistance in voting.

The election warden approved the request of the respective voters and designated a representative of the opposing party to accompany each voter and the requested aide into the polling booth. The election warden further instructed the individuals providing assistance that if they physically marked the ballot at the request of the voter, they should affix their signature to the back of the ballot. The instructions of the election warden were complied with by the aides. The procedure followed by the voters and the aides were specifically established and approved by the election warden and the warden believed that such actions were in compliance with the Maine Revised Statutes Annotated, Title 21, section 862. The Commiteee has found that no question of fraud exists.

QUESTION:

What effect does the failure by election officials to comply with the provisions of the Maine Revised Statutes, Annotated, Title 21, section 862, have upon the validity of ballots 1 through 7 and 17 through 20?

III

*Questions based on review of the face of each individual ballot.*

1. Unless answered above, is ballot #1 a valid ballot?

1(a). If the answer to question #1 is in the affirmative, for whom should the ballot be counted?

2. Unless answered above, is ballot #2 a valid ballot?

2(a). If the answer to question #2 is in the affirmative, for whom should the ballot be counted?

3. Unless answered above, is ballot #3 a valid ballot?

3(a). If the answer to question #3 is in the affirmative, for whom should the ballot be counted?

4. Unless answered above, is ballot #4 a valid ballot?

4(a). If the answer to question #4 is in the affirmative, for whom should the ballot be counted?

5. Unless answered above, is ballot #5 a valid ballot?

5(a). If the answer to question #5 is in the affirmative, for whom should the ballot be counted?

6. Unless answered above, is ballot #6 a valid ballot?

6(a). If the answer to question #6 is in the affirmative, for whom should the ballot be counted?

7. Unless answered above, is ballot #7 a valid ballot?

7(a). If the answer to question #7 is in the affirmative, for whom should the ballot be counted?

8. Is ballot #8 a valid ballot?

8(a). If the answer to question #8 is in the affirmative, for whom should the ballot be counted?

9. Is ballot #9 a valid ballot?

9(a). If the answer to question #9 is in the affirmative, for whom should the ballot be counted?

10. Is ballot #10 a valid ballot?

10(a). If the answer to question #10 is in the affirmative, for whom should the ballot be counted?

11. Is ballot #11 a valid ballot?

11(a). If the answer to question #11 is in the affirmative, for whom should the ballot be counted?

12. Is ballot #12 a valid ballot?

12(a). If the answer to question #12 is in the affirmative, for whom should the ballot be counted?

13. Is ballot #13 a valid ballot?

13(a). If the answer to question #13 is in the affirmative, for whom should the ballot be counted?

14. Is ballot #14 a valid ballot?

14(a). If the answer to question #14 is in the affirmative, for whom should the ballot be counted?

15. Is ballot #15 a valid ballot?

15(a). If the answer to question #15 is in the affirmative, for whom should the ballot be counted?

16. Is ballot #16 a valid ballot?

16(a). If the answer to question #16 is in the affirmative, for whom should the ballot be counted?

17. Unless answered above, is ballot #17 a valid ballot?

17(a). If the answer to question #17 is in the affirmative, for whom should the ballot be counted?

18. Unless answered above, is ballot #18 a valid ballot?

18(a). If the answer to question #18 is in the affirmative, for whom should the ballot be counted?

19. Unless answered above, is ballot #19 a valid ballot?

19(a). If the answer to question #19 is in the affirmative, for whom should the ballot be counted?

20. Unless answered above, is ballot #20 a valid ballot?

20(a). If the answer to question #20 is in the affirmative, for whom should the ballot be counted?

21. Is ballot #21 a valid ballot?

21(a). If the answer to question #21 is in the affirmative, for whom should the ballot be counted?

22. Is ballot #22 a valid ballot?

22(a). If the answer to question #22 is in the affirmative, for whom should the ballot be counted?

23. Is ballot #23 a valid ballot?

23(a). If the answer to question #23 is in the affirmative, for whom should the ballot be counted?

24. Is ballot #24 a valid ballot?

24(a). If the answer to question #24 is in the affirmative, for whom should the ballot be counted?

25. Is ballot #25 a valid ballot?

25(a). If the answer to question #25 is in the affirmative, for whom should the ballot be counted?

26. Is ballot #26 a valid ballot?

26(a). If the answer to question #26 is in the affirmative, for whom should the ballot be counted?

27. Is ballot #27 a valid ballot?

27(a). If the answer to question #27 is in the affirmative, for whom should the ballot be counted?

28. Is ballot #28 a valid ballot?

28(a). If the answer to question #28 is in the affirmative, for whom should the ballot be counted?

29. Is ballot #29 a valid ballot?

29(a). If the answer to question #29 is in the affirmative, for whom should the ballot be counted?

30. Is ballot #30 a valid ballot?

30(a). If the answer to question #30 is in the affirmative, for whom should the ballot be counted?

31. Is ballot #31 a valid ballot?

31(a). If the answer to question #31 is in the affirmative, for whom should the ballot be counted?

32. Is ballot #32 a valid ballot?

32(a). If the answer to question #32 is in the affirmative, for whom should the ballot be counted?

33. Is ballot #33 a valid ballot?

33(a). If the answer to question #33 is in the affirmative, for whom should the ballot be counted?

34. Is ballot #34 a valid ballot?

34(a). If the answer to question #34 is in the affirmative, for whom should the ballot be counted?

35. Is ballot #35 a valid ballot?

35(a). If the answer to question #35 is in the affirmative, for whom should the ballot be counted?

36. Is ballot #36 a valid ballot?

36(a). If the answer to question #36 is in the affirmative, for whom should the ballot be counted?

37. Is ballot #37 a valid ballot?

37(a). If the answer to question #37 is in the affirmative, for whom should the ballot be counted?

38. Is ballot #38 a valid ballot?

38(a). If the answer to question #38 is in the affirmative, for whom should the ballot be counted?

39. Is ballot #39 a valid ballot?

39(a). If the answer to question #39 is in the affirmative, for whom should the ballot be counted?

## ANSWERS OF THE JUSTICES

To the Honorable House of Representatives of the State of Maine:

In compliance with the provisions of Section 3 of Article IV of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on January 13, 1977.

■ QUESTION I: In the factual situation described, are the provisions of the Maine Revised Statutes Annotated, Title 21, section 862, to be interpreted as mandatory or directory?

ANSWER: We answer that as certain provisions of Maine Revised Statutes Annotated, Title 21, section 862 may be applicable to, and involved in, the particular factual situation described by the question, the provisions are to be interpreted as directory. *Opinion of the Justices*, 124 Me. 453, 473, 126 A. 354 (1924); *Opinion of the Justices*, 152 Me. 219, 225–227, 130 A. 2d 526 (1956).

■ QUESTION II: What effect does the failure by election officials to comply with the provisions of the Maine Revised Statutes Annotated, Title 21, section 862, have upon the validity of ballots 1 through 7 and 17 through 20?

ANSWER: We answer that the failure by election officials to comply with the provisions of the Maine Revised Statutes Annotated, Title 21, section 862, as such failure is particularly stated in the question, is without legal effect upon the validity of ballots 1 through 7 and 17 through 20. *Opinion of the Justices,* 124 Me. 453, 473, 126 A. 354 (1924); *Opinion of the Justices,* 152 Me. 219, 225–227, 130 A.2d 526 (1956).

QUESTION III: *Questions based on review of the face of each individual ballot.*

We offer a general prefatory statement to allow concise discussion and facilitate understanding of our answers to the questions based on a review of the face of each of 39 ballots.

■ The House of Representatives has characterized as "questions of law" those it

has addressed to us concerning the validity of, and proper count to be assigned to, each of 39 ballots based on a review confined to the face of each ballot. The stated basis of the characterization is that

". . . the reason for counting the questionable ballots one way or another must appear on the face of the ballots and must, therefore, be reduced to a question of law."

We, however, are not controlled by this reasoning of the House of Representatives. As the Justices of the Supreme Judicial Court from whom the House of Representatives is seeking an advisory opinion we have obligation to make an independent determination whether, by answering, we shall be acting within the limitations of Article VI, Section 3 of the Constitution of Maine, one of which is that the questions asked must truly be "important questions of law." *Opinion of the Justices*, Me., 343 A.2d 196 (1975).

We must evaluate, then, whether it is correct that, invariably, the question whether a disputed election ballot is valid, or is to be counted one way or another, if submitted to be decided strictly from a review of the face of the ballot, is to be deemed to raise only a question of law because

"the reason . . . [to govern the determination] must appear on the face of the ballots . . .."

We are mindful that on other occasions when a House of the Legislature requested an advisory opinion and made a statement to the Justices of the Supreme Judicial Court similar to that we now propose to evaluate, the Justices answered and gave advisory opinions without undertaking an independent assessment of the legal correctness of the statement. See: *Opinion of the Justices*, 161 Me. 32, 206 A.2d 541 (1965); *Opinion of the Justices*, Me., 227 A.2d 303 (1967).

The present situation is significantly different, however. The Legislature saw fit to establish, effective as of January 1, 1976, the "Commission on Governmental Ethics and Election Practices." This Commission is an independent body charged with the duty, among others,

". . . to investigate and determine the results, within the limits of the Constitution, of any contested county, state or federal election within this State." (1 M.R.S.A. §§ 1002–1008)

The Legislature expressly stated that its purpose in creating this Commission was "to strengthen" as

". . . essential under the American system of representative government that the people have faith and confidence in the integrity of the election process and the Members of the Legislature." (1 M.R.S.A. § 1001)

By 21 M.R.S.A. § 1421 the Legislature also made the Commission on Governmental Ethics and Election Practices responsible to

". . . make *findings of fact* and opinion on the final determination of election results in primary, general and special elections for county, state or federal offices that are contested." (emphasis supplied)

As to such "findings of fact and opinion on the final determination of [the] election", if the election be one

". . . where the Constitution of this State or the United States Constitution provides for final determination of the election of a candidate, the commission shall transmit to *the body vested with final determination powers* a copy of the findings of fact and opinion." 21 M.R.S.A. § 1423 (emphasis supplied)

Article IV, Part Third, Section 3 of the Constitution of Maine provides that each

". . . House shall be the judge of the elections . . . of its own members . . .."

When, therefore, as here, the contested election relates to a member of the House of Representatives of the State of Maine, it is the duty of the Commission to make findings of fact, subject to such ultimate action relative to the findings as the House of Representatives, the body vested with final determination powers, may see fit to take.

These recent developments concerning the fact-finding process operative in contested elections for legislative office accentuate the necessity that the Justices of the Supreme Judicial Court be highly sensitive to ensure compliance with the constitutional mandate that in rendering advisory opinions, they shall not engage in fact-finding but shall deal only with "questions of law."

■ Prior decisions of the Justices of the Supreme Judicial Court (rendered in other than advisory opinion contexts) have made abundantly plain that merely because determination as to the validity of, or the appropriate count to be assigned to, contested election ballots is to be made solely from the face of the ballots, it does not follow, necessarily, that a question of law is being decided; on the contrary, the decision will usually involve fact-finding. For example, in *Bartlett v. McIntire*, 108 Me. 161, 79 A. 525 (1911) the Justices observed:

"When . . . we come to the question of whether the marks placed in the square amount to a cross [or as the law presently authorizes, a check mark] and meet the statutory requirement, a *question of fact* is raised . . . ." p. 167, 79 A. p. 528. (emphasis supplied)

Similarly, the Justices in *Bartlett v. McIntire*, p. 172, 79 A. 525 deemed the questions involved in the determination of distinguishing marks to be, in general, questions of fact. This point was amplified in *Frothingham v. Woodside*, 122 Me. 525, 120 A. 906 (1923) in which the Justices stated that because inquiry must be directed to ascertainment of the apparent intent of the voter,

". . . the question of whether a given mark is or not distinguishing so as to invalidate the ballot is a question of fact and one upon which persons of equal intelligence, experience and learning may well and honestly differ." p. 533, 120 A. p. 911.

It must be acknowledged, then, that notwithstanding the questions addressed to us are confined to review only of the face of the ballots, fact-finding may be involved. We advert, therefore, to the following general legal principles to guide our determination whether we may be dealing with a question of law or a question of fact:

### Principles

■ (1) As a matter of law, regardless of intent, a voter fails to make an effective voting choice unless he uses the cross· or check mark presently mandated by statute for the purpose. *Bartlett v. McIntire*, supra; *Frothingham v. Woodside*, supra; *Opinion of the Justices*, Me., 227 A.2d 303, 308 (1967).

■ (2) As a matter of law (absent other reason to invalidate a ballot), a voter makes an effective voting choice if he causes any part of the statutorily authorized mark to fall inside an appropriate square. *Frothingham v. Woodside*, supra.

■ (3) As a matter of law, an effective voting choice is not defeated solely because the voter, in using a statutorily prescribed mark, has failed to cause any part of such mark to fall within the appropriate square. *Frothingham v. Woodside*, supra.

■ (4) Since by legal definition there can be a distinguishing mark only when the ballot manifests that the ". . . intent of the voter [is] to make his ballot distinguishable", 21 M.R.S.A. § 1(9), the finding whether or not the voter has made

such intent apparent is, in general, *a finding of fact.* It becomes a determination of *law* only when the circumstances are such that there can be no honest disagreement by reasonable persons as to the apparent intent of the voter. *Bartlett v. McIntire,* supra, 108 Me. at p. 172, 79 A. 525; *Frothingham v. Woodside,* supra, 122 Me. at p. 533, 120 A. 906.

■ (5) The determination of the nature, or place, of a mark rests on what visual perception the person examining the ballot derives and, therefore, the determination involves a *finding of fact* unless the perceptions of reasonable persons, capable of accurate visual perception, cannot differ. *Bartlett v. McIntire,* supra, 108 Me. at pp. 167, 168, 79 A. 525.

Applying the foregoing principles to the 39 individual ballots which are the subject of the instant questions, we find that the ballots fall into classes, rendering it feasible for us to answer through a comprehensive general discussion rather than by a response to the questions in the seriatim form in which they have been asked.

### A

#### Ballots 1 to 7, inclusive.

■ ANSWER: We answer that, as a matter of law, ballots 1 to 7, inclusive, are all valid ballots and as a matter of law, each ballot should be counted as a vote for Cunningham.

In our view, the only ground of doubt concerning these ballots is that in each of them the check mark (which appears so plainly that there can be no rational disagreement as to its presence) may be thought to have its apex outside the appropriate square signifying a Cunningham vote. In each instance, however, it is plain beyond rational dispute that some part of the check mark is within the square. Under Principle (2) above, this suffices to establish as a matter of law that the ballot

should be counted as a vote for Cunningham.

### B

#### Ballot 8

■ ANSWER: We answer that, as a matter of law, ballot 8 is a valid ballot and, as a matter of law, should be counted for Cunningham.

The seeming reason for dispute, here, is that there is a plain check mark obviously adjacent to the Cunningham square at the left of the square, but entirely outside the square. Under Principle (3) above, as a matter of law, this does not defeat the voter's choice, otherwise plainly manifested beyond possibility of rational disagreement, to vote for Cunningham.

### C

#### Ballot 9

■ ANSWER: We answer that, as a matter of law, ballot 9 is a valid ballot but, as a matter of law, should be counted neither for Cunningham nor for Gibbs.

Here, the question appears to be whether the voter's mark, obviously placed in the Cunningham square, is either the check mark or cross mandated by statute. We are satisfied that reasonable persons, capable of accurate visual perception, could conclude only that the mark in the Cunningham square is other than the statutorily prescribed check mark or cross. Under Principle (1) above, as a matter of law, the voter has failed to make an effective choice of either Cunningham or Gibbs.

### D

#### Ballots 10 to 16, inclusive.

■ ANSWER: (1) We must decline to answer whether each of the ballots 10 to 16, inclusive, is a valid ballot since this determination cannot be made as a matter of

law but in each case depends on a finding of fact.

The validity of ballots 10 to 16, inclusive, appears to be in question because each contains a mark either of a type or in a place not specifically permitted by 21 M.R.S.A. We are of opinion, however, that the nature of the marks and their location is such that as to each ballot reasonable persons could honestly disagree whether the apparent intent of the voter was to make his ballot distinguishable. As to the validity of each of these ballots, then, the question to be determined is not one of law. The appropriate answer requires findings of fact, as made initially by the Commission subject to fact-finding review by the House of Representatives, the ultimate judge of the elections of its members.

■■■■ (2) If, but only if, the ultimate determinations of fact produce a conclusion that some or all of ballots 10 to 16, inclusive, are valid ballots, then:

(a) We answer that if any of the ballots 11, 12, 13 and 15 is found valid, such ballot should be counted, as a matter of law, for Cunningham since there can be no rational disagreement that the voter placed a statutorily authorized mark in the appropriate square to manifest a vote for Cunningham.

(b) We must decline to answer as to the counting of ballot 10. The only rational alternatives are whether the ballot should be counted for Cunningham or not at all. While there is an obvious cross in the Cunningham square, there is also plainly apparent a cross in the Gibbs square which is accompanied by other markings. We are satisfied that reasonable persons, capable of accurate visual perception, can honestly disagree whether the apparent intent of the voter was to erase the cross in the Gibbs square. The question is, therefore, not one of law but is a question of fact for the Commission's determination, subject to fact-finding review by the House of Representatives.

(c) We must decline to answer as to the counting of ballot 14. Reasonable persons, capable of accurate visual perception, could honestly disagree whether the mark in the Cunningham square is a statutorily authorized mark. The question is, therefore, one of fact.

(d) We answer that, as a matter of law, ballot 16 should be counted neither for Cunningham nor Gibbs. We are satisfied that reasonable persons, capable of accurate visual perception, could conclude only that in each of these ballots the mark appearing in the Cunningham square is other than the statutorily required cross or check mark.

### E

*Ballots 17 to 20, inclusive.*

ANSWER: We answer that, as a matter of law, each of the ballots 17 to 20, inclusive, is a valid ballot and, as a matter of law, each should be counted as a vote for Gibbs.

The only question apparent as to each of the ballots 17 to 20, inclusive, is that in each of them some part of the statutorily authorized check mark is in the Gibbs square—and in no other square,—but the apex of the check mark is outside the Gibbs square. Under principle (2) stated above, each such mark is, as a matter of law, an effective vote for Gibbs.

### F

*Ballot 21*

■■■ ANSWER: (1) We must decline to answer the question directed to the validity of ballot 21.

The validity of ballot 21 appears brought in question because relative to the office, "State Senator (District 6)", a cross appears in the write-in square, and in the

write-in space are the words, "I. M. Graft Jr. Portland."

■ Although a person whose municipality of residence is "Portland" is not eligible as a candidate for State Senator (District 6), the ineligibility of a person to serve in the office for which the person is designated as a write-in candidate does not, per se, constitute the write-in of the person's name a distinguishing mark, *Libby v. English,* 110 Me. 449, 86 A. 975 (1913). Hence, the issue of the validity of ballot 21 becomes directed to whether the apparent play on words represented by "I. M. Graft Jr." as a purported write-in candidate necessarily renders those words a distinguishing mark, on the ground that the voter may be taken to have used the words as a comment rather than as a genuine undertaking to make a write-in vote. We believe that in the circumstances here present reasonable persons may honestly disagree as to whether the ballot manifests an apparent intent by the voter to make the ballot distinguishable. The question of the voter's apparent intent is, therefore, a question of fact upon which the Justices may not, constitutionally, render an advisory opinion. This fact-finding decision is for the Commission, subject to fact-finding review by the House of Representatives.

■ (2) Should the ultimate fact-finding determinations support ballot 21 as a valid ballot, we answer that, as a matter of law, ballot 21 should be counted for Gibbs.

We are satisfied that there can be no rational disagreement that the voter has made an effective vote for Gibbs by placing a cross, a statutorily authorized mark, in the Gibbs square.

### G

#### Ballots 22 and 23

■ ANSWER: We answer that, as a matter of law, each of these ballots is a valid ballot and should be counted for Gibbs.

As to ballots 22 and 23, we discern the only reasonable ground for dispute to be that in each of them the voter added small extra lines, or made extra shadings in the statutorily prescribed mark obviously placed in the Gibbs square. However, we find the nature of these additional markings or shadings plainly such that it is not open to rational dispute that they are entirely consistent with an honest purpose of the voter to reflect a vote. Hence, as a matter of law, they cannot be distinguishing marks invalidating the ballot. *Libby v. English,* supra, at pp. 454, 455, 86 A. 975.

### H

#### Ballots 24 and 25

■ ANSWER: (1) We must decline to answer whether ballots 24 and 25 are valid ballots.

As to ballot 24 the questionable feature relates to whether marks placed by the voter upon the word, "Dem.", appearing on the ballot opposite the names of candidates for whom the voter had plainly cast legal votes, are distinguishing marks invalidating the ballot. We find the manner of the marking such that rational persons could honestly disagree as to whether it was the apparent intent of the vote to distinguish his ballot. The question of the validity of the ballot is, therefore, not a question of law as to which we may constitutionally advise but is a question of fact for the determination of the Commission subject to fact-finding review by the House of Representatives.

■ As to the validity of ballot 25, we apprehend as the source of doubt that in voting for the office of "State Senator (District 6)", the voter placed in the write-in space the words, "Wade Trudel", but omitted to place a mark in the write-in square. In these circumstances reasonable persons could honestly disagree whether it was the apparent intent of the voter to make his ballot distinguishable. The question of the validity of the ballot is thus not

a question of law upon which we may constitutionally give an advisory opinion but is a question of fact for the determination of the Commission subject to fact-finding review by the House of Representatives.

■ (2) If, but only if, the fact-finding determinations sustain the validity of either ballot 24 or 25, we answer that, as a matter of law, such ballot should be counted as a vote for Gibbs.

We are satisfied that it is not open to rational disagreement that on each ballot the voter placed a statutorily authorized mark in the appropriate square to manifest a vote for Gibbs.

## I

### Ballot 26

■ ANSWER: We must decline to answer both whether ballot 26 is a valid ballot or how it should be counted, if at all.

Reasonable persons, capable of accurate visual perception, could not disagree that in ballot 26 a cross appears in the Gibbs square, a check mark appears in the Cunningham square which has been subjected to a pressured rubbing and there is a break in the paper within, and in the immediate vicinity of, the Cunningham square. In these circumstances a question of fact is raised whether the intention of the voter, as effectively manifested, was to achieve an erasure of the check mark in the Cunningham square. Further, if this question of fact is resolved in favor of a finding that the voter intended an erasure, the existence of the break in the paper could be thought by reasonable persons to have occurred as an incident of the erasure, and in such event the break would not constitute mutilation invalidating the ballot. *Murray v. Waite*, 113 Me. 485, 94 A. 943 (1915). It is, therefore, a question of fact (1) whether, by the markings in and about the Cunningham square, the voter manifested an intent to distinguish his ballot and (2) should no such intention be found,

whether the voter manifested an intent to erase the check mark in the Cunningham square, thus to leave an effective vote—by a statutorily authorized cross placed in the appropriate square—for Gibbs. Hence, the question concerning ballot 26 as to validity, or should validity be upheld, as to the candidate for whom the ballot should be counted, are not questions of law within our constitutional province to answer by an advisory opinion. They are questions of fact for the Commission's determination, subject to fact-finding review by the House of Representatives.

## J

### Ballot 27

■ ANSWER: (1) We answer that, as a matter of law, ballot 27 is a valid ballot. We see nothing on the face of the ballot open for disagreement by rational persons to affect the validity of the ballot.

(2) We must decline to answer, however, whether, as the only rational possibility indicated by ballot, the ballot should be counted in favor of Gibbs.

The difficulty, here, is that we believe that rational persons, capable of accurate visual perception, could honestly disagree as to what they perceive the mark placed in the Gibbs square to be, and until this underlying factual perception is determined, no ultimate judgment can be made whether the voter used a statutorily authorized mark. The issue is thus not one of law as to which alone we have constitutional authority to answer by an advisory opinion. The question of fact is for the Commission subject to fact-finding review by the House of Representatives.

## K

### Ballots 28 and 29

ANSWER: We answer that, as a matter of law, ballots 28 and 29 are valid ballots and, as a matter of law, each should be counted for Cunningham.

Our reasons for these conclusions are the same as stated in answer G above, dealing with ballots 22 and 23.

## L

### Ballot 30

■ ANSWER: We answer that, as a matter of law, ballot 30 is a valid ballot and, as a matter of law, should be counted for Cunningham.

We discern the problem as to ballot 30 to be whether the legal effect of the check mark plainly appearing in the Cunningham square is nullified as a vote for Cunningham because of the presence of an additional marking in the Gibbs square. We are satisfied that reasonable persons capable of accurate visual perception could conclude only that there is a mark in the Gibbs square which embodies neither a cross nor a check mark—the only marks authorized by statute to make a vote effective. As a matter of law, therefore, the voter has failed to register a vote for Gibbs but has effectively registered a vote for Cunningham.

## M

### Ballots 31 to 34, inclusive, and Ballot 38

■ ANSWER: We answer that, as a matter of law, ballots 31 to 34, inclusive, and ballot 38 are valid ballots and, as a matter of law, each of them should be counted as votes for Gibbs.

We apprehend the doubt as to the validity of ballot 31 to be directed to whether a mark on the write-in line for the office of Register of Probate visible immediately to the left of a woman's name written in (as to which in the appropriate place the voter indicated the municipality of residence and placed a cross in the appropriate square) is a distinguishing mark. We find that the only conclusion open to reasonable persons is that the mark consists of the word "Mrs." with obliterating lines over it. These circumstances show, as a matter of law, that the apparent intent of the voter was to further his attempt to vote correctly and is inconsistent with an intent by the voter to make the ballot distinguishable.

■ The validity of ballot 32 seems to have been questioned on the ground of a distinguishing mark because in the write-in space as to the office for which Cunningham and Gibbs were candidates the words "Jean Bowman" appear with a continuous line running entirely through both words, and the write-in square is left empty. In addition, as to the office of Register of Probate, which appears on the ballot immediately below the office of Representative to the Legislature for which Cunningham and Gibbs were candidates, the voter plainly and correctly voted for "Jean Bowman" as a write-in for Register of Probate. We are satisfied from all these circumstances that reasonable persons could conclude only that the voter intended a write-in vote for "Jean Bowman" as Register of Probate and corrected a mistaken write-in of "Jean Bowman" for Representative to the Legislature. As a matter of law, then, no apparent intent to make ballot 32 distinguishable can be attributed to the voter.

■ As to ballots 33, 34 and 38 the only possible infirmities we see are the following. In each ballot it is plain that by placing an appropriate mark in the appropriate write-in square and writing in a purported name in the appropriate write-in space, the voter sought to cast a write-in vote for an office other than that for which Cunningham and Gibbs were candidates. In each ballot, however, the voter omitted to show the municipality of residence and also, in ballots 34 and 38, failed to give a complete proper name for the write-in candidate. As a matter of law, such omissions do not transform a plainly manifested attempt to vote for a write-in candidate into a distinguishing mark invalidating the entire ballot.

*N*

*Ballots 35, 36, 37 and 39*

■ ANSWER: We answer that, as a matter of law, each of these ballots is a valid ballot and, as a matter of law, ballots 35 and 39 should be counted as votes for Cunningham, and ballots 36 and 37 should be counted as votes for Gibbs.

The only question we discern as to these ballots is whether the mark placed by the voter in the appropriate Cunningham or Gibbs square, respectively, is either the cross or check mark authorized by statute. We are satisfied that as to each of the ballots reasonable persons, capable of accurate visual perception, could not disagree, either as to their perception of what the mark in fact is or as to its classification as a statutorily authorized mark.

Dated at Portland, Maine, this first day of February, 1977.

Respectfully submitted:
ARMAND A. DUFRESNE Jr.
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY
EDWARD S. GODFREY