## JOHN F. NEWTON *vs.* FRANK E. NEWELL.

### July 9, 1880.

Elections — Contest — Appeal, how perfected.—The appeal, under Gen. St. 1878, c. 1, § 32, from the decision of a board of county canvassers to the district court, as to an election to an office, is perfected by the entry of notice of the appeal with the clerk of such court. It is not necessary that the notice specifying the points of contest, provided for in section 52, should contain any statement that an appeal has been taken.

Same—Trial in District Court.—Section 52 gives the district court jurisdiction to try election contests without a jury.

Same—Ballots containing Excess of Names.—Section 19 of said chapter, declaring that if a ballot contains a greater number of names for any one office than the number of persons required to fill the same, it shall be considered void as to all the names designated to fill such office, is peremptory. Whenever the fact of the excess of names exists, the ballot is *pro tanto* void, and cannot be counted. Ballots upon which, for a particular office, one name is printed but not in any way obliterated, and another name is written, cannot be counted for the person of either name for such office.

34

**Same—Use of Ballots at Trial of Appeal.**—The ballots cast at an election may, in a contest under section 52, *supra*, be resorted to for the purpose of investigating and ascertaining the actual state of the vote. But, to entitle them to be used for this purpose, it must affirmatively appear that they have been so carefully preserved as to place their identity beyond all reasonable doubt. If they have been so carelessly cared for as readily to afford frequent or continued opportunity to interested parties, or the friends of interested parties, to tamper with them or alter them, or to add to or take from their number, unless all reasonable doubts as to their integrity are removed by an affirmative showing, they should not be received for the purpose of disputing the returns of the board of canvassers.

**Same—Misnomer of Candidate in Ballot.**—If, for a certain office, there is but one person running of a given name, say the name of Frank E. Newell, a ballot for " Newell," simply, should be counted for him. So should a ballot for Frank Newell, or F. E. Newell, or F. Newell. So, if, to designate the person voted for, letters are used in a ballot, which do not properly spell the name Newell, but do spell a word which is *idem sonans,* such ballot should be counted for Newell. But unless the ballot is of one these kinds, or of equivalent certainty, it should be rejected.

Application of these rules to the facts of this case.

At the general election, on November 4, 1879, Newton and Newell were opposing candidates for the office of sheriff of Dakota county. The county board of canvassers found and declared that Newton had 1,466 votes, and that Newell had 1,473 votes, and was elected, and he thereupon received a certificate of election. On November 18th, Newton served on the clerk of the district court for the county a notice of appeal from the declaration or resolution of the board of canvassers, and in due time served on Newell a notice specifying the points on which the election would be contested, to which Newell replied with a counter-notice, stating additional points, not stated in the contestant's notice, on which he would offer testimony. The issues thus made having come on for trial in the district court for Dakota county, before *Crosby,* J., Newell demanded a jury trial, which was refused, and he duly excepted. The action was thereupon tried by the court, who found the facts in substance as follows; and in each case where an irregular ballot was allowed for either candidate,

the court expressly found that the voter intended to cast his vote for such candidate.

In *Burnsville*, the returns of the vote for sheriff showed 50 for defendant and 10 for plaintiff. One minor voted for plaintiff. On one ballot the name F. E. Newell was printed and not marked out, and J. F. Newton was written thereon. The court found 50 votes for defendant and 9 for plaintiff.

In *Castle Rock*, two ballots had on them the name H. C. Wing printed and not marked out, and J. F. Newton written thereon. These votes were counted, canvassed and returned for plaintiff; and the court found that the vote of this precinct was correctly returned at 20 for defendant, and 68 for plaintiff.

In *Douglas*, the vote as returned and canvassed was 76 for defendant, and 51 for plaintiff. There was one ballot (not returned or canvassed) with the name of plaintiff printed thereon, and marked out, and the name Newl written thereon. The court found that this vote should be counted for defendant, making 77 for defendant, and 51 for plaintiff.

In *Eureka*, one ballot, with the name H. C. Wing printed thereon and not marked out, and the name F. Newton written thereon, was counted, returned and canvassed for plaintiff. The court found that this should be counted for plaintiff, making 80 votes for him, and 51 for defendant.

In *Empire*, there were counted, returned and canvassed, for the office of sheriff, 130 votes for defendant, and 140 for plaintiff.

The ballot-box was brought into court, and the ballots counted, and the box was found to contain 144 ballots for F. E. Newell; 1 ballot for Newell; 127 ballots for John F. Newton; 2 ballots for Newton, and two upon which no name for sheriff appeared. The votes were carefully counted immediately after the closing of the polls, and were replaced in the ballot-box, which was closed by shutting and locking the lid, (which was on hinges,) and sealing the slit in the top of

the box by pasting a paper over it. The box was sealed in no other manner, and the ballots were not strung upon a string, as required by Gen. St. 1878, c. 1, § 18. The box and its key were then delivered to one Williams, the deputy town clerk, who carried it to his office, and placed it upon a desk, and put the key into a drawer of the desk, which remained unlocked, and so left them for a week or ten days, when the box was placed under the safe in the same room, where it remained until December 15, 1879, when it was opened and examined in the presence of Williams and one of the counsel for plaintiff, and one of the counsel for defendant, who counted the ballots for sheriff, and found the result to be the same as that of the count afterwards made in court. During all the meantime, the key had remained in the unlocked drawer.

The clerk's office where the box was kept was used as the office of the United States Express Company, and as a place for the sale of agricultural implements. The town clerk, his deputy, and one Parker all did business in the room, and had keys thereto, from the day of election to the said fifteenth day of December, 1879. It was their custom, when leaving the room unoccupied by any of their number, to lock the door, but they did not always do so, and on several occasions during this period the room was found unlocked, with no one in it; and on one occasion it was used as a dressing room by persons attending a dance in the same building.

A count, by the court, of the ballots in the box, showed that the number of ballots therein for each county officer, except sheriff, agreed with the number returned by the judges of election, except in one instance, where there was a difference of a single vote only. There were found in the box 25 ballots on which defendant's name appeared for sheriff, the name being printed on narrow strips pasted on the ballots, and none of that kind of ballots bearing plaintiff's name were found in the box.

On these facts, the court held that the evidence furnished by the ballots produced in court was not sufficient to disprove the correctness of the count made by the judges of election, and found the vote to be 130 for defendant and 140 for plaintiff, in accordance with the return and canvass.

In *Greenvale*, there were counted, returned and canvassed 41 votes for defendant, and 65 for plaintiff. The ballots produced in court showed 41 votes for defendant, and 66 for plaintiff. There were also three other ballots found in the box, which were not counted, returned or canvassed for either party. On each of these the name F. E. Newell was printed: on one, a pencil-mark was drawn through the whole name, and J. Newton written; on one, pencil-marks were drawn through the word Newell, and the word Newton written; and on one, pencil-marks were drawn through the whole name, and J. F. New written on the narrow margin of the ballot, the writing extending to the edge thereof, and indicating that the last syllable of the name was written and extended upon what the ballot was upon when the writing was made. The court counted all these ballots for plaintiff, and found that he had 69 votes, and defendant 41.

In the *city of Hastings—2d ward*—there were counted, returned and canvassed 94 votes for defendant, and 167 for plaintiff.

After the votes were counted, the ballots were strung upon a string, and replaced in the ballot-box, which the judges then locked, and sealed the slit on the top by pasting paper over it. The box was then delivered to the city clerk, who placed it on the floor under a desk in the front part of his grocery store, where he kept his office, and placed the key in a drawer in the desk, which was unlocked and remained so. The box remained in this situation for a few weeks, and was then removed to the back part of the store, and placed behind the private desk of the city clerk, where it was not in sight of persons coming into the store, unless they went behind the

desk.    In its former position, the box could be seen by any
person entering the store.    There was no evidence that the
store was at any time open when all of those engaged in car
rying on business there were absent from it.    The box was
twice opened, and the ballots twice examined, before it was
produced in court, each time by the city clerk, once in the
presence of plaintiff, and once in the presence of counsel for
defendant.    At each of these times, the city clerk read off the
votes cast for sheriff, and the other persons present counted
them as they were read off.

In this precinct there were cast, in all, 268 votes, and the
court found that the defendant had 97 votes, and plaintiff 166.

In the *city of Hastings—3rd ward*—there were returned
88 votes for defendant, and 197 for plaintiff.    Only 285 votes
in all were cast.    At the close of the polls, an unusually care-
ful count by the judges of election showed 285 ballots, and
that the aggregate number of votes cast for each office did not
exceed the number of ballots.    The ballots were placed in
the box, without being strung; the box was locked, but not
sealed in any manner, and was delivered to the city clerk,
who kept it in the same manner that he kept the ballot-box
of the 2d ward.    When produced in court, the box was found
to contain 94 votes for defendant, and 189 for plaintiff, and
one ballot with defendant's name printed thereon, and not
marked off, and the name Noten written thereon, which bal-
lot the court found should be counted for plaintiff.    There
were also four ballots found in the box, without any name
thereon for the office of sheriff, making 288 ballots in all, or
three more than were counted and returned by the judges.
No testimony was offered to explain this discrepancy.    The
court found that, on this state of facts, either the ballots pro-
duced in court were not the ballots actually cast, or else that
three ballots had found their way into the box, that were not
cast at the election.    In the first case, the return of the
judges must stand.    In the second case, since the box showed

six more ballots for defendant than were returned for him, and seven less for plaintiff than were returned for him, the excess of ballots in the box must have resulted in showing an increased vote for Newell. The court accordingly rejected the three votes in the box in excess of the number returned, and held that they should be deducted from defendant's vote, and found that defendant had 91 votes and plaintiff 190.

In *Marshan*, one ballot was cast, having defendant's name printed thereon and not marked out, and plaintiff's name written thereon. The court found that this ballot should be counted for plaintiff, and that he had 30 votes, and defendant 29.

In *Mendota*, there were counted, returned and canvassed 60 votes for defendant, and 21 for plaintiff. Among those returned for defendant were six on which the plaintiff's name was printed and marked out with a pencil, and on one of which was written the word Newell; on one, the word Neden; on one, the word Nall; on one, the word Null; on one, W. Null; and on one, F. Newell. All these the court found were properly counted for defendant.

Among the votes returned and canvassed for plaintiff were four on which defendant's name was printed; on one of these, the defendant's name was marked out, and J. F. Newton written; on one, the defendant's name was marked out, and Newton written; on one the word Frank, and the last two letters of Newell, were marked out, and the word Newton written; and upon one the defendant's name was marked out with a pencil, the pencil marks extending through the words "For sheriff," in the line above, and the word Newto was written. All these the court found were properly returned for plaintiff, and found the vote for each party to have been correctly returned and canvassed.

In *Rosemount*, there were counted, returned and canvassed 66 votes for defendant, and 75 for plaintiff. There was also one ballot, not counted, returned or canvassed for defendant,

but returned for Newell, on which plaintiff's name was printed and marked out, and the name Newell written; and this vote the court found should be counted for defendant. There were also 14 ballots, on which the defendant's name was printed and marked out. On three of these, the word Newton was written; on ten of these, J. Newton was written, and, on one of them, John Newton. None of these were returned for plaintiff, but were returned as written. The court found that all these votes should be counted for plaintiff, and that he had 89 votes and defendant 67 votes.

In *Vermillion,* there were counted, returned and canvassed 95 votes for defendant, and 41 for plaintiff. The ballot-box, being produced in court, was found to contain 92 ballots for defendant, 38 for plaintiff, and also six other ballots, on which the defendant's name was printed and marked out. On three of these, Newton was written; on one, J. F. Newton; on one, J. Newto; and on one, Jno. Newn. All these the court found should be counted for plaintiff. The court also found that two unqualified persons had voted for plaintiff, and that, of the legal votes, defendant had 92, and plaintiff 42.

In *Sciota,* there was one vote counted, returned and canvassed for plaintiff, with the name of H. C. Wing printed thereon and marked out, and J. F. Newto written thereon, and the court found that this vote was properly returned and canvassed. There was one ballot cast with the name J. F. Newton printed thereon, and the word Newton marked off and the word Newell written. The court held that this vote was properly returned and canvassed for defendant, and that he had 9 votes and plaintiff 60.

In its rulings in regard to the ballots containing a printed name not marked off, and also a written name, the court relied on *People* v. *Saxton,* 22 N. Y. 309, and McCrary on Elections, § 409.

The returns from other precincts either presented no question at all, or none which is here material. The court found

that the plaintiff received, in all, 1,480 votes, and the defendant 1,476 votes, and that the former was entitled to the office. A new trial was refused, and the defendant appealed.

*Davis, O'Brien & Wilson,* for appellant.

1. As the notice and counter-notice are the pleadings, and each averment in the notice is taken as denied, (Gen. St. 1878, c. 1, § 52,) the contestant must plead affirmatively every fact necessary to give the court jurisdiction, and show his capacity to contest. Any elector, whether a candidate or not, may contest, and the contestant must strictly comply with the statute in all respects. It is a condition precedent to his right to contest that he shall appeal from the decision of the board of canvassers, and the fact of such appeal or a notice of it should be affirmatively pleaded in his notice of contest; nor has the court jurisdiction in the case until properly advised that such appeal has been taken. The amended notice of contest is wholly wanting in this allegation, and is therefore insufficient. *Borer* v. *Kolars*, 23 Minn. 445.

2. The court erred in refusing a jury trial. A comparison between Gen. St. 1866, c. 1, § 49, (under which *Ford* v. *Wright*, 13 Minn. 518, was decided,) and Gen. St. 1878, c. 1, § 52, will demonstrate the legislative intent that all issues of fact arising in a contest of this nature should be tried by a jury, as is the practice in New York and other states.

3. The court erred in counting for Newton the double ballots in Burnsville, Castle Rock, Eureka, 3rd ward of Hastings and Marshan—in all, six. They were counted for Newton, on the authority of *People* v. *Saxton*, 22 N. Y. 309. But while the New York statute is substantially the same with Gen. St. 1878, c. 1, § 14, the provisions of section 19 of that chapter, which makes such ballots absolutely void, are not found in the New York statutes, under which *People* v. *Saxton* was decided. See *People* v. *Loomis*, 8 Wend. 396; *People* v. *Seaman*, 5 Denio, 409; *State* v. *Griffey*, 5 Neb. 161. A void ballot can show no intent.

4. The court erred in its findings of law as to Empire. The presumptions attending the return are no greater than the presumptions attending the care of the ballot-box. Each is presumed to be in conformity with law and fact, and thus to agree with the other. But where they do not agree, the ballots are the best evidence. *State* v. *The Judge*, 13 Ala. 805; *People* v. *Holden*, 28 Cal. 123; *Hudson* v. *Salomon*, 5 Cent. L. J. 404; *People* v. *Higgins*, 3 Mich. 233; Cooley Const. Lim. 625.

5. The court erred in deducting from Newell, in the 3rd ward of Hastings, three ballots found to have been cast for him, because there were three blank ballots found in the box in excess of the number of votes polled.

6. The court erred in counting for Newton the following votes: One in Greenvale, for J. F. New; in 2d ward of Hastings, one for J. Newt; in 3rd ward of Hastings, one for Noten; in Inver Grove, one for Neto; in Mendota, one where the word "sheriff" is erased in pencil; in Vermillion, one for J. Newto, and one for Jno. Newn; in Waterford, one for J. F. Newto—a total of nine votes.

The ballot itself must show the person for whom it is intended to be cast. There is no presumption that it was necessarily cast for either or any candidate or regular nominee. The oath of the voter is not competent to contradict the ballot. Therefore, there must be upon it some reasonable certainty as to whom it is intended for, and it should be identical with the name of the person claiming it, either in initials, surname, or at least as *idem sonans*. The ballots here objected to do not contain any of these elements of identity. *Hudson* v. *Salomon*, 5 Cent. L. J. 404; *Griffin* v. *Wall*, 32 Ala. 149; *People* v. *Higgins*, 3 Mich. 233; *People* v. *Cicoth*, 16 Mich. 283; *State* v. *Moffit*, 5 Ohio, 358; *People* v. *Ferguson*, 8 Cowen, 102; *People* v. *Stevens*, 5 Hill, 616; *Opinion of the Justices*, 64 Me. 596.

*Jasper N. Searles*, for respondent.

BERRY, J. This is a contest for the office of sheriff of Dakota county, carried on under the provisions of sections 32 and 52 of the general election law, Gen. St. 1878, c. 1.

1. Section 32 provides that an appeal may be taken to the district court from the decision of the board of county canvassers, by entering notice thereof with the clerk of said court within twenty days from the day of election; and section 52, that the contestant shall, within twenty days after the votes have been canvassed, cause a notice, specifying the points on which the election will be contested, to be served on the person whose election he intends to contest. The appeal is perfected by the entry of notice thereof with the clerk. The statute does not require that the notice to be served on the contestee shall contain any statement that an appeal has been taken. Such statement is therefore wholly unnecessary. The district court acquires jurisdiction of the contest by the entry of notice with its clerk.

2. Section 52 further provides that all matters relating to such contest "shall be heard and tried by the district court of the proper county, in the manner that civil actions are tried by the court." This clearly gives the district court jurisdiction to try such contests without a jury. This disposes of the preliminary points made by the counsel for contestee, and brings us to the merits.

3. The application of a few general rules, deducible from the statute and general doctrines of law, will, we think, properly dispose of the case.

Section 19 of the election law declares "if a ballot is found to contain a greater number of names for any one office than the number of persons required to fill the said office, the said ballot shall be considered void as to all the names designated to fill such office, but no further." This is peremptory.

Whenever the *fact* of the excess of names exists, the ballot is, *pro tanto,* void, and cannot be counted. The statute leaves no room for any speculation or conjecture as to the

intention of the voter. As respects the office thus voted for, the ballot must be rejected. The six ballots for sheriff upon which the name of either Newell or Wing was printed, but not in any way obliterated, and the name of Newton written, were, therefore, improperly counted for Newton, and must be deducted from his total vote as found by the court.

4. The ballots cast at an election may, in a proceeding of this nature, as in *quo warranto*, and information in the nature thereof, be resorted to for the purpose of disputing the returns of the board of canvassers, and of investigating and ascertaining the actual state of the vote. But to entitle them to be used for these purposes, it must affirmatively appear that they have, in the language of section 18 of the election law, been "carefully preserved." They must have been so carefully preserved as to place their identity beyond any reasonable doubt. If they have been so carelessly cared for as readily to afford frequent or continued opportunity to interested parties, or the friends of interested parties, to tamper with them and alter them, or add to or take from their number, unless all reasonable doubts as to their integrity are removed by an affirmative showing, the ballots are not entitled to be resorted to for the purposes mentioned. The ballots from Empire, and the second and third wards of Hastings, were, in our opinion, too carelessly kept to entitle them, within these rules, to be received in evidence, or considered by the court below, in this contest. The former were, therefore, properly rejected by the court, and the two latter improperly received.

5. With reference to the name by which a candidate may be sufficiently designated, we regard the following rules to be correct: If, for a certain office, there is but one person running of a given name, say the name of Frank E. Newell, a ballot for "Newell" simply, without any Christian name or initial thereof, will pass, and should be counted for Frank E. Newell; and so should a ballot for Frank Newell, or F. E.

Newell, or F. Newell. So, if to designate the person voted for, letters are used which do not properly spell the name "Newell," but do spell a word which is *idem sonans*, this should be counted. All these should be counted, for the reason that they designate the person intended to be voted for with reasonable certainty. But unless the ballot is of one of these kinds, or of equivalent certainty, (as it possibly may be, though we do not now perceive how,) it should be rejected. Therefore, a ballot for "Nall," or "Null," or "Neden," or "W. Null," should not be counted for Newell. Neither should a ballot for "New," or "Newt," or "Newto," or "Newn," or "Neto," be counted for a candidate of the name of Newton. "Nuton" and "Newten" may, however, be properly counted for such candidate.

What would be the effect of proof before the district court that a candidate for an office was commonly known by some abbreviation of his surname, as well as by his full surname, and whether, upon such proof, a vote by such abbreviation could properly be counted for such candidate, are questions which have not been discussed in this case, and which we are not now called upon to decide. Certainly, such proof would not be admissible before a board of town or county canvassers.

Applying these rules to the findings of the court below in this case, we reach the following result:

|  | Newell received | Newton received |
|---|---|---|
| In Burnsville, | 50 votes. | 8 votes. |
| Castle Rock, | 20 | 66 |
| Douglas, | 77 | 51 |
| Eagan, | 80 | 19 |
| Eureka, | 51 | 79 |
| Empire, | 130 | 140 |
| Greenvale, | 41 | 67 |
| Hampton, | 84 | 70 |
| Hastings— | | |
| 1st ward, | 104 | 50 |
| 2d ward, | 94 | 167 |
| 3d ward, | 88 | 197 |
| 4th ward, | 28 | 49 |
| Inver Grove, | 69 | 24 |
| Lakeville, | 101 | 91 |
| Lebanon, | 30 | 13 |
| Marshan, | 59 | 29 |
| Mendota, | 56 | 19 |
| Nininger, | 23 | 40 |
| Randolph, | 10 | 30 |
| Ravenna, | 37 | 23 |
| Rosemount, | 66 | 89 |
| Vermillion, | 92 | 40 |
| Sciota, | 13 | 29 |
| Waterford, | 8 | 59 |
| West St. Paul, | 53 | 26 |
| Total, | 1,465 | 1,475 |

The contestant is therefore elected by a majority of ten votes.

The order denying the contestee's motion for a new trial, and the judgment, are accordingly affirmed.

NOTE. A motion for reargument of this case was denied, October 19, 1880.