THE PEOPLE *ex rel.* Thomas Frole, Petitioner, *vs.* AN-
    THONY CZARNECKI *et al.* Defendants.

*Opinion filed December 17, 1912.*

1. ELECTIONS—*will of the voter must be allowed to govern, if
possible.* The intent and will of the voter, when it is expressed
in accordance with the provisions of the law and can be ascer-
tained, will govern.

2. SAME—*when candidate cannot claim place on official ballot.*
Where all candidates for vacancies in the municipal court of Chi-
cago consent to the grouping arrangement made on the primary
ballot by the election commissioners, by which some forty names
are printed as the candidates for the nine regular six-year-term
vacancies and two are printed as candidates, in accordance with
their petitions, for a six-year term newly created by ordinance,
the defeated one of such two candidates is not entitled to a place
on the official ballot as a candidate for one of the other six-year-
term vacancies, even though his vote was higher than the lowest
successful candidate therefor.

ORIGINAL petition for *mandamus.*

I. T. GREENACRE, for petitioner.

CHARLES H. MITCHELL, (THOMAS J. O'HARE, of coun-
sel,) for defendants.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an original petition filed in this court for a writ
of *mandamus* to require the board of election commission-
ers of the city of Chicago to cause to be printed on the
ballots for the November 5, 1912, election, the names of
certain persons as candidates for judges of the municipal
court of Chicago. An oral announcement refusing to grant
the writ was made at the October, 1912, term of this court,
with the statement that an opinion would be filed later.

In April, 1912, a primary election was held in the city
of Chicago under the Primary Election law for the selec-

tion of candidates of the various political parties for the offices to be filled at said November election. The terms of nine associate judges of the municipal court of Chicago, then holding office for six-year terms, expired on the first Monday of December, 1912. At this primary petitions were filed on behalf of a large number of candidates who desired to become the regular democratic candidates for associate judges of said court to succeed the nine judges whose terms were to expire. February 27, 1912, the city council of the city of Chicago passed an ordinance under section 12 of the Municipal Court act, (Hurd's Stat. 1911, p. 711,) reciting that two-thirds of the judges of the municipal court had certified that the business of said court was such as to require an increase in the number of said judges, and said ordinance provided that the said number should be increased from twenty-seven to thirty, and that there should be elected at the November 5, 1912, election three additional judges, for the respective terms of two, four and six years. After the passage of this ordinance a petition was filed on behalf of Edward J. Queeny as a democratic candidate, which petition, under the caption "Office," stated: "Associate justice municipal court under ordinance of the city council of February 19, 1912.—For six-year term." Another petition with like designation was filed by Hugh J. Kearns, also as a democratic candidate. In preparing the primary ballots the board of election commissioners of the city of Chicago had before it forty petitions for democratic candidates for justices for the six-year terms which made no reference to said ordinance, the petition of John J. Sullivan being one of this number. It also had before it the petitions of Queeny and Kearns, which stated, as above indicated, that they were candidates for the six-year term for associate justice created by the ordinance. That board, after consideration, reached a decision that all of the forty democratic candidates for associate justices to fill the six-year terms of the nine sitting judges

whose terms were to expire on the first Monday of December, 1912, should be grouped under the heading, "For judge of municipal court.—Vote for nine," and the names of the two democratic candidates, Queeny and Kearns, should be placed under the heading, "Judge of municipal court under ordinance of city council, six-year term.—Vote for one." It appears from the records that none of the democratic candidates grouped under these two headings objected to this grouping but all assented thereto. The candidates for municipal judges for the two-year term created by the ordinance were under another heading, and the candidates for the four-year term created by the ordinance were under another heading.

The ballots for the April primary were printed with the candidates for democratic municipal judges, and for each of the other parties, in groups, with the headings as suggested above. A primary election was held and the votes were canvassed by the board of election commissioners in accordance with such headings. The nine candidates on the democratic ticket having the greatest number of votes as candidates for the six-year term as associate judges of the municipal court to succeed those whose terms were about to expire, received all the way from 61,117 for the highest, to 35,925 for John J. Sullivan, the lowest of said nine candidates. For the six-year term created by the ordinance of the city council Hugh J. Kearns received 57,196 votes and Edward J. Queeny 54,975. It will thus be seen that while Queeny received less votes than Kearns, and could not, under the heading on the ballot under which he was placed, be considered as having been nominated for the six-year term created by the ordinance, he received more votes than John J. Sullivan, who was voted for for one of the six-year terms to succeed one of the judges whose terms were to expire in December, 1912, and if no distinction should be made between the six-year term created by the ordinance and the six-year terms to succeed sitting judges, Edward

J. Queeny would be one of the ten candidates receiving the highest number of votes for the ten positions.

The petition for *mandamus* avers that the board of election commissioners of the city of Chicago, and the individual members thereof, give out and assert that they will cause the official ballots for the November election, 1912, to contain the names according to the grouping as adopted on the ballots for the primary election,—that is, the nine candidates for associate judges for the six-year term without reference to the ordinance, including John J. Sullivan and not including Queeny or Kearns, and one candidate for associate judge for the six-year term under the ordinance,—that is, Hugh J. Kearns. The relator prays that a *mandamus* issue commanding said board of election commissioners, and its members, to print the ballots so there will be ten candidates for the six-year term in one group, including said Kearns and said Queeny, on the democratic ticket, but not including John J. Sullivan. He also prays that the ballots may be printed under the same rule as to the candidates for said offices on the other tickets, including republican, socialist and prohibition. From the briefs, however, it appears that the real contention is over the right of Queeny to be one of the democratic candidates on the ballot for the November election.

The petitions for both Queeny and Kearns, and the candidates on the other tickets for the corresponding office, stated that the petitioners desired these candidates to be nominated for the term created by the ordinance. The primary ballot showed that the two candidates for the six-year term under the ordinance competed with one another and not with the numerous candidates for successors to the sitting judges. It is impossible to tell now whether, if these candidates had all been running under the same heading for the six-year term, Queeny and Kearns would have received more votes than John J. Sullivan or some other one of the nine men who received the highest number of votes for

successors to the sitting judges. The voters would necessarily understand from the ballots and from the instructions given by the election commissioners, that one, only, of the candidates for the additional six-year term under the ordinance could be nominated, and that only nine of the candidates under the other heading for the six-year term could be nominated from that list.

Under a long line of decisions the intent and will of the voter, when it is expressed in accordance with the provisions of the law and can be ascertained, will govern. (*Pierce* v. *People,* 197 Ill. 432; *Schuler* v. *Hogan,* 168 id. 369; *Parker* v. *Orr,* 158 id. 609; *Behrensmeyer* v. *Kreitz,* 135 id. 591.) Queeny, and all the other candidates who filed their petitions for the nomination for the six-year term under the ordinance, acquiesced in the grouping of the candidates as made by the board of election commissioners. It would defeat the plain intent of the voters and be manifestly unjust and unfair to the other candidates and to the public at large, to allow any of these candidates to insist at this late day that they should be considered as running for some other position than it was stated on the primary ballot that they were running for. To allow Queeny to have his name printed on the ballot at the primary election under a separate grouping and have all the advantages of a smaller number of competitors, and then, in ascertaining who were nominated as candidates at the primary, to place him in another grouping, would not only be contrary to the letter and spirit of the Primary law but would result in great injustice to the other candidates.

The decision of this court in *People* v. *Barnes,* 255 Ill. 379, does not in any way conflict with the conclusion set forth in this opinion. On the contrary, the reasoning, on the facts in that case, supports the conclusion reached here.

The writ of *mandamus* must be denied.

*Writ denied.*