## WILLIAM SCHULTZ v. W. W. SHELP AND OTHERS.[1]

December 3, 1915.

Nos. 19,637—(253).

County option law — construction.

    1. Appellant's contention that under the county option law a majority of all the votes cast at the election must be in favor of the proposition submitted has been decided in the affirmative in Eikmeier v. Steffen, supra, page 287.

Harmless error.

    2. The error, if any, in admitting in evidence the ballots from Union Grove precinct was without prejudice.

Election — ballots.

    3. Certain disputed ballots examined and held that seven of them were properly counted for respondents.

Intoxicating liquor — majority against licensing sale.

    4. The record discloses that a majority of all the votes polled at the election were cast in favor of prohibiting the sale of intoxicating liquor in the county of Meeker, Minnesota.

William Schultz, a qualified elector of the county of Meeker, gave notice of appeal to the district court for that county from the decision of the board of canvassers, declaring that at a special election on June 14, 1915, a majority of votes was cast in favor of prohibiting the sale of intoxicating liquor in that county. The appeal was heard before Qvale, J., who denied the motion of contestees to dismiss the appeal,

1Reported in 155 N. W. 97.

made findings and ordered judgment in favor of contestees. From the judgment entered pursuant to the order for judgment, William Schultz appealed. Affirmed.

*C. G. Odquist* and *H. H. Bonniwell,* for appellant.

*R. H. Dart, E. P. Peterson, E. W. Campbell* and *Albert F. Foster,* for respondents.

SCHALLER, J.

This is a proceeding to contest the result of an election held in the county of Meeker on the fourteenth day of June, 1915, at which the question whether the sale of intoxicating liquors should be prohibited in the county of Meeker was submitted to the electorate.

The county canvassing board certified and declared that 1,633 votes were cast in favor of the proposition and 1,614 votes against it. From this decision William Schultz appealed to the district court of Meeker county. The contest was heard on July 19, 1915, and on August 2, 1915, the court made its findings of fact and conclusions of law and ordered judgment dismissing the contest. Judgment was entered pursuant to the order on the twenty-fifth day of August, 1915, from which judgment the contestant appeals.

The court found that the total number of persons present and voting at the election was 3,259 as shown by the poll lists; that 3,259 ballots were cast, of which 1,634 were in favor of and 1,606 were against prohibiting the sale of intoxicating liquors in Meeker county; that nine ballots should not be counted either way, and that a majority of the votes cast at the election in such county was in favor of prohibiting the sale of intoxicating liquors therein.

Three principal contentions are made by the appellant: (1) That, under the provisions of the county option law (c. 23, p. 24, Laws 1915) to adopt the proposition, a majority of all the votes cast at the election must be in favor thereof; (2) that two ballots, Exhibits 49 and 50, part of the returns of the town of Union Grove, were improperly received and counted by the court; (3) that eight other disputed ballots were erroneously counted in favor of the respondent.

1. The first point made by appellant has been decided in the affirmative in the case of Eikmeier v. Steffen, supra, page 287. In view of the

conclusions at which we have arrived on the other questions presented herein, the first point becomes unimportant.

2. It was conceded on the trial and is conceded here that 1,620 undisputed ballots were cast at said election in favor of the proposition to prohibit the sale of intoxicating liquors in Meeker county and 1,587 undisputed ballots against the same.

Of the 52 disputed ballots, the court found that 14 ballots were in favor of the proposition; that 19 were against it; that ten should be rejected, and that nine should not be counted either way.

When the inspectors appointed by the court called for the ballots from the town of Union Grove, the custodian thereof failed to produce them. Later he produced certain ballots, alleged to be the ones from Union Grove precinct. These were duly counted by the inspectors.

Contestant introduced evidence tending to show that these ballots were not kept in a safe place: that they were not at all times in the possession and custody of the lawful custodian, and that they were found in a place and under conditions which cast suspicion upon their integrity. Contestees on their part introduced evidence tending to show that the ballots were in the same condition as when cast; that they had been properly inclosed in a sealed envelope; had been placed in proper custody; and that when produced the envelope and seals were intact. The trial court admitted and counted the ballots. The law recognizes the high probative value of the ballots as evidence in contests of this kind, but ballots cannot be admitted in evidence until they have been proved intact and genuine, to the full satisfaction of the court (O'Gorman v. Richter, 31 Minn. 25, 16 N. W. 416; Newton v. Newell, 26 Minn. 529, 6 N. W. 346), and to this end certain safeguards are provided by statute. (Laws 1915, p. 231, c. 167, § 13, amending G. S. 1913, § 501.)

The election returns from the town of Union Grove showed 69 votes for and 40 votes against the proposition. The report of the inspectors showed 69 votes for and 38 votes against the proposition, and referred two ballots. The court counted one of these two ballots for the proposition, making 70 for the proposition instead of 69 as returned by the canvassing board.

The board of canvassers' count of Union Grove, 69 in favor and 40

against, is changed by the admission of Exhibits 49 and 50 so as to read 70 for, 38 against and one blank. If both ballots are excluded and the return of the canvassing board is allowed to stand, the total vote found by the court would be reduced from 1,634 "yes" to 1,633 "yes."

We are inclined to the opinion that the trial court was right in admitting the ballots in evidence, but, in view of the conclusion at which we have arrived as to the other contested ballots, it becomes unnecessary to decide the question. If the ballots from Union Grove were erroneously admitted, the error is without prejudice. The official canvass would stand. Moon v. Harris, 122 Minn. 138, 142 N. W. 12.

3. If the trial court has correctly counted the other eight ballots (Exhibits "L4," "L5," "L22," "L29," "L32," "L37," "L45," and "L46,"), there will still be a total of 1,633 votes for prohibition. We have carefully examined these exhibits and are of the opinion that seven of them, viz., "L4," "L22," "L29," "L32," "L37," "L45" and "L46," were correctly counted in favor of the proposition. We are not agreed as to "L5," a majority of the court being of the opinion that it is a blank.

Exhibit "L4" has an X mark in the space opposite the word "Yes." There is a broken pencil mark extending from near the upper left-hand corner toward the lower right-hand corner of the space opposite the word "No," apparently the result of a mistaken attempt to mark in this space. This ballot was correctly counted as a vote in the affirmative. We are satisfied from an inspection of the ballot itself that the voter clearly intended to vote "Yes." G. S. 1913, § 491.

Exhibit "L5" has no pencil mark of any kind on the face of the ballot, either in the square opposite the word "Yes" or in the square opposite the word "No" or elsewhere. There is nothing to indicate that it is other than a blank ballot, except that, in the square opposite the word "Yes," there appears a slight depression in the form of an X mark as if someone had been making an X mark on a ballot superimposed on this one. A majority of the court are of the opinion that this ballot is blank.

Exhibit "L22" has no X mark opposite either the word "Yes" or the word "No," but commencing in the square opposite the word "No" has the word "Yes" written in pencil and following the word "Yes"

an X mark. This ballot was correctly counted by the trial court. The voter clearly intended to vote "Yes."

Exhibit "L29" shows the beginning of a mark of some kind in the square opposite the word "Yes." This mark was apparently attempted to be erased or crossed out. Immediately over the erasure is an X mark very plain and bright, showing that the X mark was placed there by the voter after the attempt to erase the other mark had been made. This ballot was correctly counted "Yes."

Exhibit "L32" has the X mark immediately to the left of the word "Yes," not in the square intended for that purpose. This ballot was correctly counted "Yes." The statute provides that "When a mark (X) is made out of its proper place, but on or so near a name or space as to indicate clearly that the voter intended to mark such name, the vote shall be counted as so intended." G. S. 1913, § 491, subd. 3. Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500.

Exhibit "L37" is clearly a ballot in favor of the proposition. It is criticised because of a mark on the reverse side of the ballot immediately following the initials of the judges of election. This appears to be an X mark crossed out or erased and obliterated. It is argued that this mark tends to identify the voter who made it. We cannot so hold. The words "official ballot" are printed on both sides of the ballot. The voter apparently made a mistake in putting the X mark in the wrong place, then discovered the mistake, erased the mark and voted the ballot correctly.

Exhibit "L45" is a perfect ballot, except that instead of the X mark the voter has, with an indelible pencil, drawn a perpendicular line in the square opposite the word "Yes." This ballot was properly counted as a vote in favor of the proposition. The statute provides that "When a voter uses uniformly a mark other than (X) in marking his ballot, clearly indicating his intent to mark against a name, and does not use (X) anywhere else on the ballot, his vote shall be counted for each candidate so marked." G. S. 1913, § 491, subd. 7.

Exhibit "L46" is very much like "L4," except that in this case the line opposite the word "No" appears to have been drawn from right to left, but the X mark opposite the word "Yes" is very clear and decided,

What we have said in relation to "L4" applies to this ballot, which was properly counted "Yes."

The provision of the statute that "all ballots shall be counted for the persons for whom they were intended, so far as such intent can be clearly ascertained from the ballots themselves," and the rules for ascertaining such intent, were correctly applied by the trial court in every case except as to Exhibit "L5." G. S. 1913, § 491. Erickson v. Paulson, 111 Minn. 336, 126 N. W. 1097, and cases cited; Nelson v. McBride, 117 Minn. 387, 135 N. W. 1002; Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758.

4. The result is that of the ballots properly counted (and accepting the returns from Union Grove at 69 "Yes" and 40 "No") 1,632 ballots were cast for the prohibition of the sale of intoxicating liquors in Meeker county. The total number of persons voting was 3,259, so that this proposition received a clear majority of all the votes polled at the election.

Judgment affirmed.          —————————