[1] Reported in 228 N.W. 155.
This is an election contest by William McVeigh, as contestant, against M. A. Spang, contestee, candidates for the office of county commissioner in the fourth district of Itasca county at the last election. Contestant appeals from an order denying his motion for a new trial. Contestee has appealed from the judgment, for the purpose of raising questions as to the election not raised by contestant's appeal. *Page 580 
The county convassing board declared the result to be that contestant had received 1,279 votes and the contestee 1,292 votes at the election. The board did not include in its report and findings any direct statement or declaration that the contestee was elected to the office. The board failed in some respects, not here very material, to comply with G. S. 1923 (1 Mason, 1927) § 474, as to reporting total number of votes cast in the county, total number of ballots cast in each precinct, and the total number of registered names of male and female voters.
Inspectors were appointed in the district court to recount the ballots. They found and counted 1,285 votes for contestee and 1,290 for contestant. This included disputed and undisputed ballots, except two held defective as showing no choice and not counted by the inspectors. The court at the trial was called upon to determine the validity of disputed ballots. It found that the inspectors had counted for contestant 10 ballots which the court found to be invalid and deducted from contestant's 1,290 votes, thereby reducing his valid votes to 1,280. The court further found that one of the ballots not counted by the inspectors was a vote for contestee and should be so counted, and that four disputed ballots counted by the inspectors for the contestee were invalid and should be deducted from his votes, thus leaving the valid votes for contestee 1,282, and that he was elected. These 15 ballots so found by the court to have been either erroneously counted or erroneously excluded by the inspectors are challenged by the contestant on this appeal.
The contestee presents two other questions for review: (1) That the county canvassing board having failed in its report and return to declare the contestee elected to the office, there was no determination to appeal from, and the appeal was premature and presented nothing for the district court to try; (2) that the evidence to identify the ballots from precinct No. 1 of Grand Rapids was insufficient to show that they were the identical ballots cast in the election in that precinct; that the evidence tended to show that these ballots had been tampered with and changed and had not *Page 581 
been properly kept after the election; and that the court should not have received them in evidence.
1. The duties of the county canvassing board are prescribed by G. S. 1923 (1 Mason, 1927) § 474. It requires the board to report the names of all persons receiving votes for any county office and the number of votes received by each. Section 476 of the statute provides that the board, having completed its canvass, shall declare the person receiving the highest number of votes for each county office duly elected thereto. Section 488 provides that any voter may contest the election of any person who is declared elected to any county office by filing notice of appeal within ten days after the canvass is completed and causing copy of the notice to be served on the contestee in such manner and within such time as the court shall direct. While the canvassing board properly should declare the person receiving the highest number of votes to be elected, that is but a necessary conclusion from their finding as to the number of votes received by each candidate. Nothing to the contrary appearing, the finding of the canvassing board that a candidate has received the highest number of the votes cast for a certain office is in legal effect a declaration that he is elected to that office. There is authority for holding that the canvassing board must canvass the vote and declare the result before any appeal from their determination can be taken. But the important function of the board is to canvass the vote and determine the number cast for each candidate. When they have done that and stated and declared the number of votes found cast for each candidate, they have declared the result of the election. No case has been brought to our attention where, after canvassing the returns and determining the number of votes received by each candidate, the mere fact that the board failed expressly to declare the one having the highest vote elected was an insufficient declaration of the result to authorize an appeal or contest. State ex rel. Biggs v. Churchill, 15 Minn. 369
(455) does not go that far.
2. The court did not err in receiving in evidence the ballots from precinct No. 1 of Grand Rapids. The questions whether the ballots *Page 582 
have been so kept and preserved that they may safely be received in evidence and are intact and genuine are questions of fact for the decision of the trial court. Moon v. Harris,122 Minn. 138, 142 N.W. 12; Schultz v. Shelp, 131 Minn. 303,155 N.W. 97. There was in those two cases as much or more evidence tending to impeach the identity and to show lack of proper care in keeping the ballots as in the present case. Even under the rule applied in Newton v. Newell, 26 Minn. 529,6 N.W. 346, that the identity of the ballots must be shown beyond a reasonable doubt, there was evidence sufficient to sustain the ruling of the court.
3. Thirteen ballots were each marked with a distinct X on the back thereof. All of these marks except one were found on ballots from precincts Nos. 2 and 4 in the village of Grand Rapids, the county seat. The commissioner district was composed of 14 precincts, four in the village of Grand Rapids and ten country precincts. The ballots, when delivered to voters, had on the back thereof the heading "Official Ballot," followed by the facsimile printed signature of the county auditor, and below that two lines upon each of which were the written initials of one of the judges of election in the particular precinct. Following the initials of each judge and at the end of the line on which the initials were placed was the printed word "Judge." Eight of the X marks in question were made on the line, between the initials of the election judge and the printed word at the end of the line. In three instances the mark was placed just after the printed word. In one instance the mark was placed before the initials of an election judge, and in one case below the printed word following the initials. The court found that these marks were marks of identification placed thereon by the voters with intent to identify their ballots, and rejected all ballots so marked.
The question presented is whether the court was justified in rejecting all or any of these ballots on the ground stated. There was no direct evidence as to by whom, or under what circumstances or with what intent, these ballots were marked.
In precinct No. 2 of Grand Rapids there were six of these marked ballots, five of them for contestant and one for contestee. This *Page 583 
peculiarity appears in the marking: The five ballots for contestant were each marked on the line after the initials of the election judge J. H. Sometimes his initials appeared on the first line with the initials of the other judge on the second line. At other times his initials appeared on the second line with the initials of the other judge on the line above. But no matter on which line his initials appeared, the mark followed the initials J. H. The ballot for the contestee had the mark placed after the initials of the other judge.
There were also six of these marked ballots found in precinct No. 4 of Grand Rapids, three for each candidate. There the peculiarity above noted did not appear. Four of the marked ballots, two for each candidate, were marked on or near the line upon which were the initials of one judge, and the other two, one for each candidate, were marked on the line having the initials of the other judge.
The fact that twelve of these markings were found in two precincts in the village of Grand Rapids, and only one such marking in the other twelve precincts is one of the circumstances shown.
A mark placed upon the back of a ballot in the space provided for the initials of the election judges is more of an identification mark than if placed on the face of the ballot. The voter, before returning his ballot, is required to fold it so as to conceal its face and all marks thereon and leave exposed only the indorsement, the facsimile signature, and initials of the judges on the back thereof. G. S. 1923 (1 Mason, 1927) § 424. The purpose of leaving this space on the back of the ballot exposed is so that, when receiving the ballot, the election judges may by inspection identify it as an official ballot duly initialed by them. When the voter returns his ballot he is identified by the calling of his name and residence, and the fact that he has voted is entered on the list of voters. G. S. 1923 (1 Mason, 1927) § 425. Before a ballot is deposited in the ballot box therefore the election judges know that it is the ballot of that particular voter. In inspecting the back of such ballot to see that it is official and bears the initials of the judges, any distinct mark placed in the space for the initials of the judges *Page 584 
is necessarily seen by the election judge and identifies the ballot, which identification and disclosure become complete when that ballot is examined and canvassed by the judges. Pennington v. Hare, 60 Minn. 146, 62 N.W. 116.
It may be argued that if several voters made similar marks upon their ballots, the election judges would not know which particular voter marked any one of such ballots. There were six marked ballots in each of two precincts. Even if the marks on these ballots in a given precinct were alike, the judges of election, having seen and identified the voters as the ballots were returned, would know which six voters cast the marked ballots. This would be sufficient disclosure to invalidate the ballots. There is the further circumstance that the markings were not the same. They were not in the same position with reference to the initials of the judges, nor all in connection with the initials of the same judge, nor are the X marks identical. An observant judge could identify the ballot cast by a particular voter.
Where there are a number of ballots in one precinct having unauthorized marks, made in substantially the same manner and place, this negatives the idea that they were accidentally made or were the result of ignorance or mistake. Such markings evidence a design and purpose and are properly held identifying marks. State ex rel. Phelan v. Walsh, 62 Conn. 260, 25 A. 1,17 L.R.A. 364.
Where marks are made by a voter upon his ballot in a place or in such manner that it can reasonably be seen or inferred that they were made in an attempt to indicate his choice or vote for candidates or measures to be voted for, the marks are generally held not to be identifying marks. But if a voter intentionally makes marks upon his ballot in an unauthorized place not connected in any way with the efforts of the voter to indicate his choice of candidates or measures to be voted for and not otherwise reasonably explained, such marks may well be held to be identification marks. Ward v. Fletcher, 36 S.D. 98,153 N.W. 962; Hodgson v. Knoblauch, 268 Ill. 315, 109 N.E. 338, Ann. Cas. 1917E, 653. These rules are recognized in Bloedel v. Cromwell, 104 Minn. 487, 116 N.W. 947. *Page 585 
In Elwell v. Comstock, 99 Minn. 261, 109 N.W. 113, 698,7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270, it is held that any mark placed upon a ballot by which the voter may be identified by any person vitiates the ballot. It is unnecessary that the mark be of such a character as to enable every person inspecting it to identify the voter. In that case initials of the voter or of someone were placed on the ballot.
In Winn v. Blackman, 229 Ill. 198, 82 N.E. 215,120 A.S.R. 237, a mark in the form of the letter V was placed on the back of the ballot and was held an identifying mark. See also Brents v. Smith, 250 Ill. 521, 95 N.E. 484; People ex rel. Frole v. Czarnecki, 256 Ill. 567, 100 N.E. 282; State ex rel. Schellert v. Thornburg, 177 Ind. 178, 97 N.E. 534.
The question whether a mark is an identifying mark and intentionally made by the voter is a question of fact. The intention of the voter is to be ascertained from the entire ballot, and the voter cannot be heard to say he did not intend to identify the ballot. Elwell v. Comstock, 99 Minn. 261,109 N.W. 113, 698, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270. This rule does not prevent the court from taking into consideration other ballots in evidence and similarly marked in the same precinct.
The ballots being written documents and present in evidence here, this court is in as good a position to construe them as was the trial court. We are nevertheless governed by the rule that if the evidence reasonably sustains the findings of the trial court the findings control. The derivative rule is that it is the province of the trial court to draw reasonable inferences from the evidence before it, and that if the inferences drawn by the trial court are such as reasonable minds might properly draw from the evidence its findings therefrom are sufficiently sustained. N.W. F. M. Ins. Co. v. Connecticut F. Ins. Co. 105 Minn. 483, 117 N.W. 825; G. N. Ry. Co. v. City of Minneapolis, 142 Minn. 308, 172 N.W. 135.
The court having found on sufficient evidence that the ballots in these precincts had been properly kept and preserved and were the identical ballots cast by the voters, it reasonably followed that the *Page 586 
marks in question were held to have been made by the voters. That they were intentionally made is sufficiently apparent from the marks themselves. That the marks were of such a character and so placed as to identify the ballots has been indicated. The findings of the court are sufficiently sustained by the evidence as to these ballots.
There are numerous decisions in other states on the questions here considered. Because of differences in the election laws and more or less difference in the conclusions arrived at by the different courts, no controlling rules can be deduced therefrom. The following additional cases may be cited as tending to sustain the conclusions reached. Farnham v. Boland,134 Cal. 151, 66 P. 200, 366; McCarthy v. Wilson, 146 Cal. 323,82 P. 243; Bass v. Leavitt, 11 Cal.App. 582, 105 P. 771; Beckley v. Alling, 91 Conn. 362, 99 A. 1034; Sego v. Stoddard,136 Ind. 297, 36 N.E. 204, 22 L.R.A. 468; Libby v. English,110 Me. 449, 86 A. 975; State ex rel. Springmeyer v. Baker,35 Nev. 300, 129 P. 452; People ex rel. Lytle v. Johnson, 158 N Y S. 232; In re Slevin, 179 App. Div. 618, 167 N.Y. S. 72; Rice v. Westerly, 35 R.I. 117, 85 A. 553; Tschetter v. Ray, 28 S.D. 604,134 N.W. 796; State ex rel. Orr v. Fawcett, 17 Wn. 188,49 P. 346.
This court, under our statute, has been liberal in its effort to ascertain the intentions of the voter and in giving effect to marks on his ballot appearing to have been made in an attempt to indicate his choice. Prenevost v. Delorme, 129 Minn. 359,152 N.W. 758; Schultz v. Shelp, 131 Minn. 303,155 N.W. 97. It has been liberal also in disregarding other marks appearing to have been accidentally made or of such a character as not to indicate any intention thereby to identify the ballot. Truelsen v. Hugo, 81 Minn. 73, 83 N.W. 500; Lannon v. Ring, 107 Minn. 453, 120 N.W. 1082; Doepke v. King, 132 Minn. 290,156 N.W. 125. In the case last cited [p. 293] it was held that writing the name of an unknown person on the back of the ballot identified it; but as to one ballot having the word "dry" written on the face thereof and one having the word "wet" written on the back thereof it was held that the *Page 587 
trial court did not err in holding the ballots valid. The election was under the local option law, and the voter marking his ballot "dry" voted to prohibit the sale of liquor; the one marking his ballot "wet" voted wet, to permit such sale. Apparently the trial court inferred from the ballots that these words were used by the electors to aid and emphasize their choice and votes on the proposition and were not intended as identifying marks. There was some reason for so holding, and this court sustained the trial court in such conclusion. No such inference or reason can be drawn from the ballots here in question.
4. A ballot in one precinct, contestee's exhibit 32, contains voting X marks in four squares, or partly in such squares, after the blank spaces below the names of candidates for four different offices, and no other marks. This ballot was counted for contestee because the mark in the bracket where his name appeared was nearest his name, and the court inferred the voter intended these marks as voting marks and by some inadvertence placed the mark in the square below instead of opposite the name of each candidate. It is quite generally held that a cross-mark in a square opposite a blank space, nothing else appearing, is not a vote for any candidate. Nelson v. McBride,117 Minn. 387, 135 N.W. 1002; Prenevost v. Delorme, 129 Minn. 359,152 N.W. 758. There are distinctions between the ballots here in question and the ones considered in those two cases. It does not appear in those cases that the ballots there considered were marked uniformly in or partly in blank spaces. It is apparent that if a voter correctly marks his ballot in the proper square opposite the names of candidates as to a number of offices, and then in the bracket containing the names of candidates for one particular office he marks opposite the blank space provided for writing in the name of some candidate not on the ballot, it cannot then be readily ascertained that he intended to vote for anyone for that office. Here there were no such correct markings. It does not seem probable that a voter would go through the ceremony of voting and make cross-marks in four squares on his ballot without intending to vote for any one, or that he intended *Page 588 
to show disapproval of all candidates for four different offices, or that he intended to write in names not on the ballot in four places but forgot or neglected to do so in any place. Again, the ballot shows that in two of the places, but not in the bracket where contestee's name appears, one or both of the upper arms of the cross-mark extend up into the square opposite the name of the candidate. As to those candidates there would be no very serious doubt of the validity of the ballot. But if the intention in two cases was to vote for the candidate whose name appears next above, there is no good reason for holding that the same intention was not had in the other two. Under G. S. 1923 (1 Mason, 1927) § 454 (3), and the liberal rules followed by this court in determining the intention of the voter in cases of misplaced marks, the finding of the court that this ballot was a vote for contestee is sustained.
The case of State ex rel. Crain v. Acker, 142 Wis. 394,125 N.W. 952, 953, 20 Ann. Cas. 670, cited and followed in our cases above cited, is not so persuasive as might at first glance appear. The Wisconsin statute under which that case was decided differs from ours in that the provision there was that "if an elector shall mark his ballot with a cross-mark * * * or any other marks * * * within the square after, at the right of the name of any candidate, or at any place within the space in which the name appears indicating an intent to vote for such person, it shall be deemed a sufficient vote for the candidate whose name it is opposite." [Stats. 1898, § 57 (3), as amended by L. 1907, c. 583.] This statute confines the mark that may be counted to the space in which the candidate's name appears and the square following that name. The Wisconsin court points out that where a voter correctly marks in the proper square as to many candidates and then marks after a blank space in one case, the inference that he marked ignorantly or inadvertently cannot be reached. It concluded that the trial court was correct, in that situation, in holding that the intention of the voter could not be ascertained.
5. Contestee's exhibit 23 was cast in precinct No. 1 of Grand Rapids. It is marked for the contestant and was counted for him *Page 589 
by the referees. The court found that this ballot was cast by one Dickinson, that he was assisted in marking the ballot by a clerk of the election, and that neither of them was sworn before the assistance was rendered. We hold that the evidence is sufficient to justify the court in finding this ballot was cast by Dickinson and that he was so assisted. That a voter, assisted by others, without taking the oath prescribed by G. S. 1923 (1 Mason, 1927) § 427, thereby unlawfully discloses his ballot and renders it invalid, is well established. State ex rel. Braley v. Gay, 59 Minn. 6, 60 N.W. 676, 50 A.S.R. 389; McEwen v. Prince, 125 Minn. 417, 147 N.W. 275; Nelson v. Bullard, 155 Minn. 419, 194 N.W. 308. The ballot was properly rejected.
The order and judgment appealed from are affirmed.