# ARTHUR J. SULLIVAN v. FRANKLIN E. EBNER.[1]

·October 11, 1935.

No. 30,446.

*Murphy & Cook,* for contestant-appellant.
*Franklin E. Ebner* and *F. E. Ebner, Sr.,* for contestee-respondent.

HOLT, JUSTICE.

Contestant and contestee were candidates for the office of county attorney of Crow Wing county ·at the general election November 6, 1934. The contestee was duly declared elected by the county canvassing board. Thereupon contestant instituted this suit. Prepar-

[1]Reported in 262 N. W. 574.

atory to the trial inspectors were appointed to inspect and report the number of ballots cast in each precinct of the county for contestant and contestee, respectively. At the trial the inspectors' report was accepted as correct as to every precinct except the village of Crosby and the fourth precinct of the city of Brainerd. The court accepted the report of the latter as correct, but concluded that the return of the village canvassing board should not be disturbed. Hence this appeal must be decided upon the action of the trial court in respect to the result of the vote in the village of Crosby, where the finding is that the contestant received 442 votes and the contestee 418. The total vote, including that of the village as thus found, was 4,552 for contestant and 4,578 for contestee. The inspectors reported 45 more ballots cast for county attorney in the village of Crosby than returned by the village canvassing board. These additional votes for county attorney increased contestant's by 42 and the contestee's by 3 and thus gave the former a total of 4,594 and the latter 4,581.

The contestant assigns as error the refusal of the court to substitute the last named figures in place of those found and to modify the conclusions of law accordingly. Respondent contends that since there is no appeal from an order refusing to amend findings, error assigned upon such refusal is not available to contestant upon this appeal. In Louis F. Dow Co. v. Bittner, 185 Minn. 499, 241 N. W. 569, the syllabus reads:

"An order refusing to amend findings of fact and conclusions of law by adding to, or striking out, or inserting others in lieu of those made is not appealable; but the error claimed is reviewable when properly presented on appeal from an appealable order or judgment." Prior decisions on the subject are therein referred to.

The assignments of error challenging the finding made as to the number of votes cast for contestant and contestee herein and the refusal to amend the same by substituting the figures proposed by contestant go to the vital point of this appeal. The burden was upon contestant clearly to show the court that the ballots produced at the trial were in the same condition as when cast and canvassed

by the village election board. This was the main question of fact to be determined by the court. Evidence of change or tampering may appear from an inspection of the ballots themselves, from examination of the container in which kept, or from the manner in which the container had been safeguarded from the time of the election until the trial. Newton v. Newell, 26 Minn. 529, 6 N. W. 346; O'Gorman v. Richter, 31 Minn. 25, 16 N. W. 416; Moon v. Harris, 122 Minn. 138, 142 N. W. 12; Schultz v. Shelp, 131 Minn. 303, 155 N. W. 97; McVeigh v. Spang, 178 Minn. 578, 228 N. W. 155, 156. In the case last cited it is said [178 Minn. 581]:

"The questions whether the ballots have been so kept and preserved that they may safely be received in evidence and are intact and genuine are questions of fact for the decision of the trial court."

In the instant contest the court ordered a recount of the votes cast for sheriff and clerk of court, there being two candidates for each office, so as to throw light upon the genuineness of the ballots for contestant and contestee herein. The information thus furnished, showing somewhat of a different variance between the return of the village canvassing board and the inspectors' report as to votes for sheriff and clerk of court from that for county attorney, was not reassuring as to the genuineness of the ballots produced at the trial. There was also testimony from the village canvassing board that 74 voters had not voted for either of the two candidates for county attorney and that one voted for one Fullerton. Of the 74 ballots not voting for county attorney 10 were absolutely blank as to other candidates. The inspectors found only 4 blank ballots and 29 on which neither contestant nor contestee received a vote. The fact that of the additional 45 votes for county attorney found by the inspectors 42 were for contestant and only 3 for contestee throws doubt on the proposition that the ballots now are in the condition they were when cast and rather refutes the suggestion of one of the relief judges that in the canvass a bunch of ballots (estimated as between 20 and 40) had been "strung" under mistaken supposition that the votes in that bunch had been tallied and checked for the candidates therein voted for. The court re-

ceived in evidence how the blue ballots were kept after being canvassed during the additional 30 hours required to canvass the state ballot; how they were thereafter placed in an envelope, tied and sealed; taken by one of the judges to his home overnight; then, next day, delivered by him to the auditor's office in the courthouse at Brainerd; there placed in the vault, to which thereafter access was had every working day by county officers, employes, and others, from doors leading to the rooms of both the auditor and the county commissioners. These doors were locked at night, but the evidence showed that the iron shutters to the window on the north side of the vault were not closed or locked and that the window was secured merely by a latch. These are only some of the items of evidence received bearing upon whether the ballots produced at the trial from Crosby were in the same condition as when cast. If any one undertakes to change or tamper with ballots it is of course done in secret. An eyewitness is rarely to be had. So the proof as to whether the ballots produced at the trial of a contest are genuine or altered must be determined upon circumstantial evidence. A perusal of the record herein satisfies us that the learned trial judge, as well as counsel on both sides, had in mind from first to last that the main issue of fact, which controlled the decision herein, was whether or not the ballots at the trial were in the same condition as when cast and canvassed by the election board in the village of Crosby. The court determined that contestant had not established that they were. We do not think the evidence demands a contrary finding. The findings and memorandum make it clear that the decision would have declared contestant elected had the genuineness of the ballots from the village of Crosby been proved.

Order affirmed.